### Jefferson County Distillery Co. v. Clifton, Deputy Commissioner.

(Decided June 16, 1933.)

CARROLL & McELWAIN for appellant.

BAILEY P. WOOTTON, Attorney General, and S. H. BROWN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The appellant, Jefferson County Distillery Company, is a Kentucky corporation authorized by its charter to engage in the manufacture, sale, and transportation of distilled spirits under the provisions of the state and federal law, and is so engaged in this state. Being desirous of increasing its capital stock and to sell its shares to the public, it made application in the usual course to the appellee, Evalyn C. Clifton, deputy commissioner of the Kentucky securities department, in charge of the securities division, for permission to do so. In compliance with the various requirements per-

taining to such applications, appellant filed with the appellee a copy of an advertisement or prospectus which it intended to use in connection with the sale of these securities. In substance it stated that, in the event of the repeal of the Eighteenth Amendment to the Federal Constitution, appellant will be authorized to engage in the manufacture of whisky in the state of Kentucky and the transportation and sale of such whisky for beverage purposes in such other states as do not prohibit such sales; that neither section 226a of the Kentucky Constitution nor the Rash-Gullion Act, section 2554a-1 et seq., Kentucky Statutes, would prevent the appellant from engaging in this business. On receipt of this application, appellee denied that the facts stated in the prospectus regarding the business and prospects of appellant were true, and denied that appellant, even in the event of the repeal of the Eighteenth Amendment, could engage in the state of Kentucky in the business as outlined in the prospectus. In all other particulars the application was found to be satisfactory, but the permit to sell shares was refused solely upon the ground that its statements concerning its prospects and the business it could do in the state of Kentucky, in the event of the repeal of the Eighteenth Amendment, were false. Thereupon this suit was brought under the Declaratory Judgment Act to have determined this dispute between appellant and appellee.

The issues presented may be summarized as follows: 1. In the event of the repeal of the Eighteenth Amendment, while section 226a of the Kentucky Constitution and the laws enacted pursuant thereto remain in force, will the Jefferson County Distillery Company have the right to continue the manufacture in Kentucky of whisky for transportation and sale for beverage purposes in such other states as may permit such sale? II. In the event of the repeal of the Eighteenth Amendment, while section 226a of the Kentucky Constitution and the laws enacted pursuant thereto remain in force, will the Jefferson County Distillery Company have the right to transport into other states for sale for beverage purposes, where such sales are lawful, whisky now stored or which may be hereafter stored in Kentucky, regardless of whether such whisky was manufactured for other than beverage purposes? The lower court answered both of these questions in the negative, and,

from its judgment so holding, this appeal is prosecuted.

I. Section 226a of the Constitution, the Seventh Amendment to our Constitution and adopted in 1919, provides as follows:

"After June 30, 1920, the manufacture, sale or transportation of spirituous, vinous, malt or other intoxicating liquors, except for sacramental, medicinal, scientific or mechanical purposes, in the Commonwealth of Kentucky, is hereby prohibited. All sections or parts thereof of the constitution, insofar as they may be inconsistent with this section, are hereby repealed and nullified. The general assembly shall enforce this section by appropriate legislation."

Section 1 of the Rash-Gullion Act, now section 2554a-1 of the Kentucky Statutes, is as follows:

"That it shall be unlawful to manufacture, sell, barter, give away, or keep for sale, or unlawfully have in possession or transport spirituous, vinous, malt or intoxicating liquors except for sacramental, medicinal, scientific or mechanical purposes in the Commonwealth of Kentucky."

It is earnestly contended by the appellant that the purpose of our constitutional and legislative provisions was to prohibit the use in this state of intoxicating liquors for beverage purposes and to regulate, but not prohibit, its manufacture, sale, or transportation for other purposes. It quotes the following from the case of Dials v. Commonwealth, 192 Ky. 440, 233 S. W. 888, 889:

"The purpose of the Legislature in the enactment of this chapter, as indicated by its title and terms, and in view of the fact that it was enacted immediately after the adoption of an amendment to the state Constitution, now section 226a thereof, prohibiting the manufacture, sale, or transportation of intoxicating liquors in the commonwealth, except for certain named purposes, was to provide penalties for violations of the constitutional amendment; and to regulate the manufacture, sale, and transportation of same for such excepted purposes."

From Lakes v. Goodloe, 195 Ky. 240, 242 S. W. 632, 636, it takes the following:

"The present statute makes it unlawful to manu-

818

facture, sell, barter, or give away the designated liquors, except for sacramental, medicinal, scientific, or mechanical purposes. It is easy to see that the prohibition is in reality directed against the use of intoxicating liquors as a beverage. The acts which the statute makes penal—the manufacture, sale, gift, possession, keeping for sale; or transportation—are themselves entirely harmless and unproductive of the many evils which the partisans of sumptuary legislation rely upon to justify it, and no one pretends that the prohibition of these acts is for any purpose, except to make difficult, and thereby restrict the use of intoxicating liquors as a beverage. Of course, that was the legislative design and purpose. The statute through its own provisions, and by reference to federal legislation and regulations, provides the manner by which the possession of intoxicating liquors may be acquired for the purposes which, under the statute, they may be had. It is not necessary to advert to the facts and circumstances under which possession of intoxicating liquors, which may be held to be lawful may be had, as there is no concrete case before us, but the various states of case will develop as the act may be enforced, and such questions will be determined as they arise.''

Appellant is quite right in its contention that the purpose of our Constitution and legislation was to end the evils incident to the use of intoxicating liquors as beverages. But our people in adopting our State Constitution and our Legislature in passing the Rash-Gullion Act intended to bring about that end by absolutely forbidding the manufacture, sale, or transportation of intoxicating liquors in this state, except for sacramental, medicinal, scientific, or mechanical purposes. The named exceptions were the only ones and as to them the Legislature provided regulation. Language could hardly be plainer than that found in our State Constitution and in the Rash-Gullion Act. While it may be true that our people perhaps were not concerned with the evils incident to the use of intoxicating liquors for beverage purposes in states other than our own, yet, in order to avoid the use of such liquors for beverage purposes in this state, they provided a total prohibition of the manufacture, sale, or transportation of such liquors, no

matter where to be used or for what purpose to be used, save and except in the cases of sacramental, medicinal, scientific, or mechanical purposes. In the case of Purity Extract & Tonic Co. v. Lynch, 226 U. S. 192, 33 S. Ct. 44, 46, 57 L. Ed. 184, the court said:

> "When a state exerting its recognized authority, undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary, in order to make its action effective. It does not follow that because a transaction, separately considered, is innocuous, it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the government."

And in Jacob Ruppert, Inc., v. Caffey, 251 U. S. 264, 40 S. Ct. 141, 148, 64 L. Ed. 260, it was said:

> "The state, within the limits we have stated, must decide upon the measures that are needful for the protection of its people, and; having regard to the artifices which are used to promote the sale of intoxicants under the guise of innocent beverages, it would constitute an unwarranted departure from accepted principle to hold that the prohibition of the sale of all malt liquors, including the beverage in question, was beyond its reserved power."

And so here in order to protect its people from the use of intoxicating liquors as a beverage, the state has undertaken to suppress entirely the manufacture, sale, and transportation of the same, except for certain designated purposes, no matter where to be used. The lower court correctly answered the first question in the negative.

II. It is argued however, that to prohibit the transportation for sale for beverage purposes, where such sales are lawful, whisky now stored, or which may be hereafter stored in Kentucky, regardless of whether such whisky was manufactured for other than beverage use, would be to interfere with interstate commerce, and that hence the lower court erred in answering the second question in the negative. The case of State v. Peet, 80 Vt. 449, 68 A. 661, 14 L. R. A. (N. S.) 677, 130 Am. St. Rep. 998, is relied upon. The argument over-

looks the fundamental proposition that the whisky stored and to be stored and on which transportation is sought was and is to be manufactured for one or more of certain specific purposes, to wit, sacramental, medicinal, scientific, or mechanical. The state could have forbidden the manufacture of the whisky for any purpose, though to be used outside of the state, and such prohibition would not have violated any constitutional provisions as to regulation of interstate commerce. Kidd v. Pearson, 128 U. S. 1, 9 S. Ct. 6, 32 L. Ed. 346. This being true, it could relax the prohibition as to certain excepted uses, retaining in full vigor the prohibition as to other cases. Having manufactured for the excepted uses, the appellant may not divert the article so manufactured to other uses and then invoke the commerce clause of the Federal Constitution to shield it in its transportation of that liquor for such other uses. The appellant secures the right to manufacture because of the use to which it proposes to devote the liquor. To hold it to its proposal after the liquor is manufactured violates no part of the commerce clause of the Federal Constitution. The lower court correctly answered the second question in the negative.

Finding no error in the judgment of the lower court, it is affirmed.

Whole court sitting.