**STATE et al. v. PUBLIC SERVICE CORPORATION OF TEXAS.**

No. 8358.

Court of Civil Appeals of Texas. Austin.
Nov. 6, 1935.

Rehearing Denied Nov. 27, 1935.

Wm. McCraw, Atty. Gen., Alfred M. Scott, Asst. Atty. Gen., and F. L. Kuykendall, of Austin, Chief Examiner, Gas Utilities Division, Railroad Commission of Texas, for appellant.

Slay & Simon, of Fort Worth, and Ben H. Powell, of Austin, for appellee.

BLAIR, Justice.

This litigation arose as follows: After notice and hearing the Railroad Commission of Texas promulgated an order which "Decreed * * * that from and after December 1, 1934, the Public Service Corporation of Texas shall not charge and/or set up on its books as an operating expense more than twenty-seven (27¢) cents per M.C.F., for domestic natural gas at the city gate of any towns in Texas served by it."

The order further provided that the cause be kept open, and subject to change after notice and hearing.

Appellee Public Service Corporation of Texas, herein called the Utility, instituted this proceeding against the members of the Railroad Commission and others, herein called the Commission, seeking a temporary restraining order, an interlocutory injunction, and ultimately a permanent injunction, restraining the Commission from attempting to enforce the provisions of said order; the Utility alleging that the Commission was without authority or jurisdiction to make the order, because its business consisted of a single unit, engaged in the production, transportation, and distribution of natural gas for domestic, industrial, and commercial purposes; and in which business only a burner tip charge or rate was collected, and no city gate rate was charged or carried on its books, except it does supply gas at a city gate rate to an independent distributing company serving the town of Spearman, under a contract made prior to the institution of its present single-unit system; and that the amount of gas delivered to Spearman is inconsequential. The Utility further alleged that the 27 cent rate was unjust and unreasonable and confiscatory, because the rate would not afford a reasonable return on the property used in the public service.

By answer and cross-action the Commission set up a general demurrer and sought to have the order complained of declared valid, just, and reasonable, and to perpetually restrain the Utility from violating it.

By supplemental petition appellee Utility addressed a general demurrer to the answer and cross-action of the Commission to the effect that the Commission had no authority or jurisdiction to fix the city gate rate; and that the order was not binding upon the Utility, and would not be res adjudicata in any future hearing to determine the fair burner tip rate to be charged in any city or town served with gas by it.

The trial court sustained both the general demurrer of the Commission and of the Utility, and, upon each declining to amend, dismissed the entire proceedings; from which action the Commission alone has appealed.

The facts alleged show that appellee Utility's business consisted of a single unit, under a single ownership, and was engaged in the production, transportation, and distribution of natural gas for domestic, industrial, and commercial purposes from the wellhead to the ultimate consumer or user, in several cities and towns in Texas; that in such business the Utility only charged burner tip rates, and did not carry on its books any city gate rate or charge, except it does supply gas under a contract made prior to the institution of its present single business system on a city gate rate basis to an independent distributing company servicing the town of Spearman with gas.

The Utility contends that the Commission had no authority, power, or jurisdiction to fix a uniform city gate rate for gas applicable to all cities and towns in Texas supplied with gas by the gas pipe line and distributing system of the Utility, particularly as to the cities and towns in which the pipe line and distribution system of appellee Utility serves gas to the burner tip consumer or user within the cities and towns, unless the Commission at the same time or in the same proceeding also fixes the burner tip rate. Differently stated: Does the Commission have the authority, power, or jurisdiction under its regulatory supervision of appellee Utility to require it not "to charge and/or set up on its books as an operating expense more than twenty-seven (27¢) cents per M.C.F. for domestic gas at the city gate of any town in Texas served by it," over the objection of the Utility that such gate rate would not be binding upon it and would not be res adjudicata in any future hearing to determine a fair burner tip rate to be charged in any city or town served with gas by it? We have reached the conclusion that the Commission had the authority, power, and jurisdiction to promulgate and enforce the order complained of; and that, until set aside or modified in a proper proceeding by the Commission or by the court on appeal, the rate order is binding upon appellee Utility, and res adjudicata of such matters in any hearing which may thereafter be had for the purpose of determining a fair and reasonable burner tip rate for any city or town served with gas by appellee Utility.

Article 6023, R.S. 1925, confers full and complete authority, power, and jurisdiction upon the Railroad Commission to regulate and control and "to make all necessary rules and regulations for the govern-

ment and regulation" of all persons, associations, or corporations owning or engaged in the common carrier or private gas pipe line business, or engaged in the drilling or the operation of gas wells; and to regulate and supervise the "operations" of all kinds of business engaged in the production, transportation, distribution, and sale of natural gas to the public for domestic or other use.

Articles 6050, 6051, 6052, and 6053 classify the various kinds of business engaged in producing, transporting, delivering, and selling natural gas to the public for domestic or other use, and declare each to be a public gas utility, affected with the public interest, and subject to the regulation and control of the Commission. Every such gas utility is required to keep "books, accounts, papers, records, receipts, vouchers, and other data required by the Commission," in an office in Texas. Gas pipe lines engaged in producing, buying, transporting, delivering, or otherwise dealing in natural gas are each declared to be a public utility, affected with the public interest, and in nature and according to the established method of conducting same a monopoly, and subject in respect to all their holdings pertaining to the gas business and in all relations to the public, and in respect to their producing, transporting, receiving and distributing facilities, to the full and complete control and supervision of the Commission. Authority is also given the Commission to fix, establish, and enforce a reasonable rate which pipe lines may charge for gas delivered at the city gate to another distributing company or municipality; to fix a reasonable rate for gas sold and delivered by pipe lines or other distributing companies to the public for domestic or other use; and to fix and establish a fair and equitable division of the proceeds of the sale of natural gas between the producing or transporting companies and the companies distributing or selling it to the ultimate consumer. In the exercise of the power so conferred, the Commission is authorized to act upon its own motion, or upon the petition of any person, corporation, municipality, etc., showing a substantial interest in the subject.

Article 1119 confers the authority, power, and jurisdiction upon any city or town having a population of 2,000 or more, to fix the rates charged by any public utility operating within such city or town; and article 1175 confers the same authority, power, and jurisdiction upon any city operating under a home rule charter. Article 6058 authorizes an appeal to the Commission to review the rates fixed by any city or town, with authority, power, and jurisdiction to set aside such rates, if found unjust and unreasonable; and to substitute therefor its own just and reasonable rates. And when the statutes are considered together, it is obvious that the Legislature conferred the exclusive authority, power, and jurisdiction upon the Commission to fix and regulate the burner tip rates for which any gas utility may deliver and sell gas to the public in towns or cities of less than 2,000 population.

We interpret the order complained of as intending to regulate two phases of the Utility's gas business, as follows:

(1) As applied to the facts alleged, the order means that as to the city of Spearman and any other city or town where it may hereafter and while the order is in force, sell and deliver gas at the city gate to an independent distributor, the Utility shall not charge in excess of the 27 cent city gate rate.

(2) As to all other cities and towns where the Utility pipe line may also operate its own distributing system within the same, it "shall not charge or set up on its books as operating expense" in excess of the 27 cent city gate rate fixed by the order.

The aforementioned statutes show the legislative intent to confer full and plenary authority, power, and jurisdiction upon certain cities or towns, and ultimately upon the Commission, to completely regulate, control, and govern the natural gas industry in all of its phases; and to fix just and reasonable rates for which natural gas may be sold to the public for domestic, industrial, and commercial use. The primary objective or purpose of such statutes and the rules, regulations, or orders of the Commission attempting to govern and control the public gas utility industry or business, is to in the end fix and effectuate just and reasonable ultimate consumer or burner tip rates for which natural gas may be sold to the public. In its effort to accomplish this objective or purpose, it may be again briefly stated that the Legislature has conferred upon cities or towns having a population of 2,000 or more, and upon home rule chartered cities or towns, the authority, pow-

er, and jurisdiction to originate and to fix by ordinance local burner tip rates for gas sold to the public within the limits of said cities or towns by the distributing utility, with the right of an appeal by the utility to the Commission for a review of the city ordinance rates. If such rates are found to be unjust and unreasonable, the Commission has the authority to determine what would be just and reasonable rates, and to substitute or enforce them in lieu of the city ordinance rates. The statutes confer exclusive authority, power, and jurisdiction upon the Commission to originate and fix local or burner tip rates for gas sold to the public in all towns of less than 2,000 population; to fix city gate rates for gas sold and delivered by any gas pipe line utility at the city gate of any city or town in Texas; and to fix and establish a fair and equitable division of the proceeds of the sales of natural gas between the producing and transporting companies and the companies distributing it within the cities and towns to the ultimate consumer or user. The wisdom of this division of authority to originate local rates in certain instances is not the concern of the courts, but was for the determination of the Legislature. However, since this authority to originate local rates has been divided, with the final authority vested in the Commission in all instances to determine the justness and reasonableness of all local rates, and to fix and enforce such rates, it. is manifest that the rate-making authorities must co-operate and co-ordinate their functions to the fullest extent possible, so as to accomplish the legislative objective or purpose to in the end fix and effectuate just and reasonable ultimate consumer or burner tip rates for gas sold to the public. In the ordinary course of the exercise of the divided rate-making powers, some of the general and supervisory rules, regulations, or orders of the Commission must necessarily be preliminary. Details are left to the administrative and supervisory discretion of the Commission, with complete authority to make all rules, regulations, or orders deemed to be necessary to effectuate the legislative intent, and to ultimately fix just and reasonable burner tip rates for gas. To hold otherwise, or to sustain the contention of the Utility that the Commission cannot fix the city gate rate as to any city or town served by it, except in separate hearings as to each such city or town, and unless it fixes the burner tip rates for gas at the same time and in the same hearing, would obviously mean that the best methods could not be used and the powers conferred upon the Commission would be nugatory, because the expense and multitude of litigation or hearings thus set in motion would completely defeat the purposes of the statutes, rules, regulations, and order of the Commission. No city or town could afford the expense of a hearing to determine what would be a reasonable city gate rate, or an expense necessary to produce and transport the gas to its city limits; and to require it to do so would constitute a farce and mockery of the powers of the Legislature to regulate the privately operated public gas utility, which the statutes declare to be a monopoly, and which operates on the theory of maximum profits, if not regulated. The instant case presents a fair example of the fallacy of the contention of appellee Utility.

Take for instance the town of Spearman. It had the authority under the aforementioned statutes to fix the local or burner tip rates of the independent distributing company serving it with gas, but in order to do so it must under the decisions inquire into the reasonableness of the city gate rate which the distributing company paid appellee Utility. Spearman had no authority to fix the city gate rate. In effect the same inquiry would have been necessary by all other cities and towns having the authority to fix local rates, and in which appellee Utility pipe line served the local consumer or user with its own distributing system; and in effect the same inquiry would have necessarily been made by the Commission before it could have fixed the burner tip rates for any town having a population of less than 2,000. Several cities and towns had complained to the Commission of their local rates. Therefore, the Commission after notice and hearing promulgated the order complained of, fixing the city gate rate applicable to all cities and towns served with gas by appellee in Texas. The effect of the order is that the Commission found that the 27 cent city gate rate would afford appellee Utility a reasonable return on its properties used in the purchase or production and transportation of the natural gas up to the city gates of the cities and towns served by it; that in any hearing thereafter, either by the Commission or any city or town, for the purpose of fixing the local or burner tip rates, no

further inquiry as to the reasonableness of the city gate rate would be necessary so long as the gate rate fixed was in force. Manifestly, this was the practical method of handling the situation; and if the 27 cent city gate rate is finally held in this proceeding to be just and reasonable, it will be res adjudicata of such matters in any hearing which may have been or may hereafter be had for the purpose of determining the just and reasonable burner tip rates for gas in any city or town served with gas by appellee.

It is also manifest that the provision of the order that appellee "shall not charge and/or set up on its books as operating expenses," for its business of producing and transporting gas to the gates of all cities and towns served by it in excess of the 27 cent city gate rate, is valid and enforceable until set aside by proper authority, and is res adjudicata of such matters. The statutes give the Commission authority to require all gas utilities to keep such books and accounts as it may require. Such utilities are declared to be monopolies, and subject in respect to all their properties to the control of the Commission, and subject in respect to their producing, transporting, receiving, and distributing facilities to the full and complete control and regulation of the Commission. And clearly the Commission may require a gas pipe line company engaged in producing, transporting, distributing, and selling gas to the public to keep books segregating these various phases of its business, and to charge each or any phase of its business with the expenses incurred therein, so that any other phase of its business may be properly regulated and controlled by the authorities given the power and jurisdiction to do so. West Ohio Gas Co. v. Public Utilities Comm., 294 U.S. 63, 55 S.Ct. 316, 79 L. Ed. 761. The statutes empower the rate-making authorities to determine just and reasonable rates for which gas may be sold to the public. Obviously, such authority carries with it all powers necessary or proper to the execution of the authority. Vital to the exercise of such author-

ity by the Commission is the power to make rules and regulations with respect to the method of keeping the books, accounts, etc., pertaining to the gas pipe line business. St. Joseph Stock Yards Co. v. United States et al. (D.C.) 11 F.Supp. 322; Columbus Gas & Fuel Co. v. Pub. Utility Com., 292 U.S. 398, 54 S.Ct. 763, 78 L.Ed. 1327, 91 A.L.R. 1403.

Appellee cites the case of State Corporation Comm. v. Wichita Gas Co., 290 U.S. 561, 54 S.Ct. 321, 78 L.Ed. 500, as being conclusive authority for its aforementioned contentions. This decision deals with and construes Kansas statutes, which do not appear to be similar to our statutes, particularly with respect to the division of authority to originate local or burner tip rates for gas. Then, too, it is a familiar rule that federal courts will accept as final and binding the decision of the state court construing the state's public utility statutes, and the rules, regulations, or orders of the state's public utility commission, unless they infringe constitutional rights. At the time of the decision in the Wichita Gas Case, the courts of Kansas had not construed the statutes there involved. Since then the Johnson Act (U.S.C.A. title 28, § 41, subds. (1) and (1a) became effective May 14, 1934, which act requires that rate cases go through the state courts in the manner prescribed before the federal courts will entertain jurisdiction. This court held in the recent case of the State of Texas v. Lone Star Gas Co., 86 S.W.(2d) 484, that an order of the Commission fixing the city gate rate for gas after notice and hearing was a final appealable order; and that it could be thereafter used and enforced in any subsequent hearing or proceeding to which it was applicable without further notice or hearing. That view is reiterated here.

We reverse the judgment of the trial court and remand the cause for trial of the issue as to whether the 27 cent city gas rate fixed by the Commission was just and reasonable.

Reversed and remanded.