## RAILROAD COMMISSION v. KONOWA OPERATING CO. et al.

No. 9413.

Court of Civil Appeals of Texas. Austin.

Oct. 6, 1943.

Gillis A. Johnson, of Fort Worth, for appellant.

No appearance for appellees.

McCLENDON, Chief Justice.

Appeal from a final judgment: 1) Decreeing that as to "marginal wells" the Railroad Commission's East Texas Oil Field "Water-Oil Ratio (originally 10 to 1, later reduced to 5 to 1) Orders" were invalid as being in conflict with the marginal well law (Art. 6049b, Vernon's Ann. Civ.St.), and that the Commission was without authority to enforce the orders as to marginal wells; 2) enjoining the Commission from putting into effect or enforcing the orders as to plaintiffs' (appellees') marginal wells, but restricting the injunction "solely, to the marginal wells of plaintiffs"; and 3) denying all other sought relief.

The suit was by Konowa (Konowa Operating Company) and a number of others owning marginal and other salt water producing wells in the East Texas Oil Field affected by the water-oil ratio orders, brought in their own behalf and as a class suit in behalf of all others similarly situated, against the Railroad Commission. Plaintiffs contended that the effect of the orders was to restrict the production of marginal wells which was prohibited by the marginal well law, and that they were invalid as to other wells within their purview because discriminatory as between them and marginal wells, as to which latter they were invalid. It was also contended that the orders were void in that

they were unreasonable and confiscatory. The Commission contended that the orders were reasonable and appropriate to the prevention of waste, and were in fact essential to the preservation of the life of the field; that they were not in conflict with the marginal well law in that if they restricted the production of marginal wells they did so only incidentally; that they constituted only a proper *method of production,* which was essential to the prevention of waste and the life of the field; and that, if the orders (properly construed) conflicted with the marginal well law, that law was invalid because 1) in conflict with the oil conservation laws enacted under the mandate of Art. XVI, Sec. 59a of the Texas Constitution, Vernon's Ann.St.; and 2) indefinite and uncertain, in that it fixed no standard or criterion for its application and administration. The trial was to the court resulting in the above stated judgment, from which the Commission alone has appealed.

The trial court filed elaborate fact findings, which are not challenged in this court. For our present purposes it is only necessary to state that they fully sustain every contention of the Commission with respect to the reasonableness and propriety of the orders, and their essentiality to prevent waste and to preserve the life of the East Texas Oil Field. The court held that the effect of the orders was to restrict the production of marginal wells and that they were, therefore, to that extent in conflict with the marginal well law and invalid under the court's further holding that the marginal well law (so construed with reference to the orders) was valid.

Only the Commission has briefed the case. The appellees have filed a "motion for final disposition of the case" in which they ask this court to make such orders as may be deemed proper for the purpose of enabling them to abandon their suit, that the judgment of the trial court be set aside and the suit dismissed with prejudice at their cost. This motion was predicated upon verified allegations to the effect that facilities for reinjecting water in excess of that allowed by the orders into the field reservoir in compliance with the orders are now available as to all wells involved in the suit except three owned by the Konowa; that as to these three wells the Konowa had applied to the Commission for exception to the orders under the expressed "policy of the Commission to permit any operator affected by said order to file an application before it to show, if he can, that his position in the field is exceptional and unusual, and that it is impossible for him to secure a connection with the Salt Water Company or to reinject the salt water in the ground, and that the Defendant Commission will grant a hearing on such application to determine if any temporary relief should be granted to him;" and that the Konowa "now wishes to rely solely upon the opportunity afforded by the Commission to obtain relief as to such orders, and the enforcement thereof."

It is manifest that the effect of the requested judgment is to finally adjudicate the validity of the orders in suit as to appellees and bar them from further contesting their validity in any subsequent suit, thus rendering moot all questions here involved as between appellees and the Commission. The Commission has contested this motion upon the following (substantially stated) grounds:

1) The trial court's judgment in effect decrees that the Commission is without authority to pass any regulatory conservation measures affecting in any way production from marginal wells, and the Commission is entitled to have that issue authoritatively determined, since it involves questions of continuing public importance.

2) Art. 6049c, Vernon's Ann.Civ.St., expressly provides for judicial review of conservation orders of the Commission, and requires (when so brought in review) that the court shall decide the questions involved therein.

3) The case is not moot under the Uniform Declaratory Judgment Act, Chap. 164, p. 265, Gen.Laws, Reg.Ses. 48th Leg.1943, Vernon's Ann.Civ.St. art. 2524—1 et seq., which became effective prior to the trial of this cause.

At the oral argument upon the motion, appellees (through their counsel) stated that they were willing to concede that the orders in suit do not when properly construed conflict with the marginal well law and that they would consent to a decree to that effect; but that they would not concede the invalidity of the marginal well law, and would contest a decree to that effect. Counsel for the Commission then asserted that a consent decree would only be binding upon the parties to the decree, and that the Commission was entitled to an

authoritative adjudication of the validity of the orders.

We are not entirely clear in the view that in this state of the proceeding there is left in the case an adversary controversy which is essential to justiciability under the Uniform Declaratory Judgment Act (See Douglas Oil Co. v. State (Whiteside Case), Tex.CivApp., 81 S.W. 2d 1064, also Anderson on Declaratory Judgments, §§ 7–11, pp. 22–56), and which we think is also essential to the adjudication of a question of public interest. In this latter connection the Commission relies upon the following cases: Southern Pac. Co. v. I. C. C., 219 U.S. 433, 31 S.Ct. 288, 55 L.Ed. 283; Id., 200 U.S. 536, 26 S. Ct. 330, 50 L.Ed. 585; Southern Pac. T. Co. v. I. C. C., 219 U.S. 498, 31 S.Ct. 279, 55 L. Ed. 310; McGrain v. Daugherty, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580, 50 A.L.R. 1; Brown v. Humble Oil & Refining Co., 126 Tex. 296, 83 S.W.2d 935, 99 A.L.R. 1107, and some others of analogous import. An examination of each of these cases will, we believe, disclose that in each of them there still remained in the case an adversary controversy, although in some of them (not, however, in the Trans-Missouri case) none of the consequential relief originally sought was still either sought or available. We think it unnecessary to review these cases. As a general proposition it is well established that where no adversary controversy exists an adjudication is not authoritative but advisory only.

If, under the stated circumstances there still exists an adversary controversy, such controversy is limited to the question whether the orders in suit conflict with the marginal well law, and to sustain them that law must be stricken down. Independently of any admission of appellees, it is clear beyond peradventure under the unchallenged findings of the trial court, the general effect of which is stated above, that the water-oil ratio orders are within the powers delegated to and enjoined upon the Commission under the oil conservation statutes designed to prevent waste. We are also clearly of the view that they do not conflict with the marginal well law, when that law is given its reasonable, fair and proper construction. This point has been very ably briefed by appellant and by amici curiae in a brief prepared for the trial court. Our views upon this point we now state briefly.

The marginal well law was first enacted in 1931, some two years after the first proration order of the Commission. Its provisions were contained in two sections. The first defined marginal wells. The second prohibited artificial curtailment of their production. Section 1 has been amended from time to time, the last amendment being enacted in 1941, 47th Leg. p. 892, Ch. 550. Section 2 has not been amended. The two sections in so far as they relate to the East Texas Oil Field read:

"Section 1. The term 'marginal well' as used herein means any oil well which is incapable of producing its maximum capacity of oil except by pumping, gas lift, or other means of artificial lift, and which well so equipped is capable, under normal unrestricted operating conditions, of producing such daily quantities of oil as herein set out, as would be damaged, or result in a loss of production ultimately recoverable, or cause the premature abandonment of same, if its maximum daily production were artificially curtailed. The following described wells shall be deemed 'marginal wells' in this State:

"* * *

"(b) Any oil well incapable of producing its maximum daily capacity of oil except by pumping, gas lift, or other means of artificial lift, within this State and having a maximum daily capacity for production of twenty (20) barrels or less, averaged over the preceding thirty (30) consecutive days, producing from a horizon deeper than two thousand (2,000) feet and less in depth than four thousand (4,000) feet.".

"Sec. 2. To artificially curtail the production of any 'Marginal Well' below the marginal limit as set out above prior to its ultimate plugging and abandonment is hereby declared to be waste, and no rule or order of the Railroad Commission of Texas, or other constituted legal authority, shall be entered requiring restriction of the production of any 'Marginal Well' as herein defined."

The original water oil ratio order was passed November 19, 1942. Its pertinent provisions read:

"(a) Any oil well producing in excess of ten (10) barrels of water per barrel of oil produced, shall be allowed to produce daily only that number of barrels of water determined by ten (10) by the daily oil allowable for said well as computed under the existing allocation formula in effect for

said field. The water volume thus obtained shall be known as the daily water limit, in barrels, that said well will be permitted to produce in any one day from the above named oil reservoir. The daily oil allowable of such well shall then be determined and assigned by dividing its daily water limit by its producing water-oil ratio.

"(b) If an operator is returning water to the East Texas Field oil reservoir, or if water is being returned to said oil reservoir on behalf of an operator, the water-oil ratio on the well from which the returned water was produced shall be computed on the basis of net water produced. The term 'net water' as used herein is defined as the difference between the volume of water produced from a well and the volume of water from that well which is returned to the producing formation from whence it was produced."

A subsequent order superseding the original order reduced the water-oil ratio from 10 to 1, to 5 to 1. It differs from the original order in no other respect.

It is to be observed that Section 1 of the marginal well law uses the phrase "under *normal* unrestricted operating conditions." The noun "norm" is defined as "a rule or authoritative standard; model; type; pattern" (Webster). The adjective "normal" is defined: "According to, constituting, or not deviating from, an established norm, rule or principle" (Id.). The quoted phrase therefore means "under unrestricted operating conditions which accord with established rule." Established *operating* rule certainly includes all *operating* rules established by the Commission which that body is authorized to make under its delegated powers. The court's fact findings conclusively show that where the rules are complied with there is no restriction of production whatever. It is only where they are not complied with that restriction of production results. This, we think, will be readily conceded by all parties to the suit. The rules are clearly *operating* rules and not rules restrictive of production. The purpose of the rules is not to restrict production but to impose an "operating condition," the manifest objective of which is to prevent waste and preserve the life of the field, to which objective they are not only appropriate but essential. If when complied with they *might incidentally* restrict production, we think they would not on that account conflict with the marginal well law. But that question is not involved under the trial court's findings.

There are a number of rules of the Commission prescribing "operating conditions" designed to prevent waste which are applied alike to marginal and other wells; notably the gas-oil ratio and vacuum pump rules. Some of these rules antedate the marginal well law. It is not reasonable to conclude that the marginal well law was intended to strike down all those rules as to marginal wells and to authorize any character of production methods that might be employed by their operators, however wasteful or disasterous to the field they might be. Such construction would raise grave questions as to the validity of the law, and should be avoided if the law is susceptible of any other reasonable construction consistent with upholding these rules. It should also be noted that the trial court's findings expressly exclude any theory that the rules in suit constitute in any sense a subterfuge for evasion of the marginal well law.

The above quoted "policy" of the Commission to grant relief in individual cases of undue hardship in application of the rules must be treated, we think, as the Commission's own construction of its rules, and as incorporated therein. Orders of the Commission in this regard are of course appealable, as are its other conservation orders.

We hold that the purpose of the marginal well law was to prohibit the passage of orders designed and operating directly to restrict production in marginal wells, such as proration and other like orders, if such there be. That the orders in suit do not come within the purview of such prohibition, are therefore not in conflict with the marginal well law, and are valid. This holding concedes, arguendo, the validity of the marginal well law, a question upon which, however, we express no opinion, since it is not essential to this holding and the proper disposition of the case thereunder.

The trial court's judgment is reversed and the suit of appellees is finally dismissed with prejudice. All costs of this and the trial courts are assessed against appellees.

Reversed and suit dismissed.