**RAILROAD COMMISSION et al. v. HOUSTON NATURAL GAS CORPORATION.**

No. 9467.

Court of Civil Appeals of Texas. Austin.

Jan. 17, 1945.

Rehearing Denied March 7, 1945.

Grover Sellers, Atty. Gen., and Ed Roy Simmons and David W. Heath, Asst. Attys. Gen., for appellant Railroad Commission of Texas.

Geo. D. Neal, of Houston, and Kuykendall, Bauknight, Mann & Stevenson, of Austin, for appellant Houston Natural Gas Co.

W. C. Gray, City Atty., of Palacios, for appellee.

BLAIR, Justice.

This proceeding for a declaratory judgment under the Uniform Declaratory Judgments Act of this State (Arts. 2524—1, §§ 1, 2, Vernon's Ann.Civ.St.) arose as follows:

Under authority of Art. 1119, the City of Palacios passed an ordinance reducing the rates for gas sold to the public in said city by appellee, Houston Natural Gas Corporation, a gas utility. Appellee gas utility, herein called the Utility, appealed to the Railroad Commission under authority of Art. 6058, which provides that a gas utility may so appeal for a review of a city ordinance reducing its gas rates, and further provides that "the Commission shall hear such appeal de novo," and that it shall make such order therein "as it may deem just and reasonable." The Commission set the matter for hearing and in accordance with its usual practice in such matters instructed the accountants and engineers of its Gas Utility Division to inspect and audit the books and records of the Utility, and to inspect and appraise its property used in serving gas to the public in said city; all of which was done.

Under its usual practice the Commission intended to use its said employees as witnesses and their audits and appraisals so

obtained as evidence, and to use the Chief Examiner of its Gas Utility Division, an attorney, to examine its own employee witnesses and to cross-examine witnesses offered by the Utility on its appeal to the Commission under Art. 6058, for a review of the ordinance reducing its gas rates, and to have the Commission determine and fix just and reasonable rates for gas sold by the Utility to the public in said City of Palacios.

A few days prior to the date set for the hearing the Utility filed this proceeding for the declaratory judgment against appellants, the City of Palacios, the Commission and its members, and the Attorney General, herein referred to as the Commission, seeking a construction of Arts. 6050 to 6066, both inclusive, and particularly of Art. 6058, to adjudicate or declare whether it or the applicable portions of the other statutes cited authorize the Commission to so furnish and use its own employees and their evidence in preparation of and on the pending appeal and de novo hearing under Art. 6058.

The Utility alleged that the construction so placed upon the statutes involved by the Commission affects its rights, status, or other legal relations with respect to the power or authority of the Commission to so furnish and use its employees and their evidence in preparation of and on its appeal under Art. 6058, to determine and fix just and reasonable gas rates, both presently and in the future. The Utility prayed for a declaratory judgment adjudicating and determining whether the statutes involved gave the Commission the power or authority to so use its employees and their evidence; and also prayed for a temporary restraining order pending the hearing of the suit for the declaratory judgment, which was granted; and for such other temporary and permanent injunctive relief as it might show itself entitled to receive.

The Commission filed pleas to the jurisdiction and in abatement to the suit of the Utility for the declaratory judgment, that for the several reasons stated such proceeding was not maintainable under the facts alleged therefor; and in answer to the merits alleged that the Commission has the authority to so furnish and use its employees and their evidence in preparation of and on the appeal and de novo hearing pending before it under Art. 6058, by virtue of the applicable provisions of Arts. 6050 to 6066, both inclusive.

The court overruled the pleas of the Commission to the jurisdiction and in abatement; but on the merits held that the statutes authorize the Commission to so furnish and use its employees and their evidence in preparation of and on the appeal and de novo hearing under Art. 6058, and denied the Utility any relief sought; and from which judgments the Commission and the Utility have appealed.

■■ On its appeal from the judgment overruling its pleas to the jurisdiction and in abatement, the Commission contends that under the facts alleged for the declaratory judgment the suit is merely one to enjoin the proceeding or hearing brought by the Utility under Art. 6058, at a time when such proceeding or hearing is still in progress and incomplete; and that the declaratory judgment proceeding is not maintainable to grant such injunctive relief.

We think that under the facts alleged the suit of the Utility is a proceeding under the Uniform Declaratory Judgments Act for the construction of the pertinent portions of Arts. 6050 to 6066, both inclusive, to adjudicate or declare whether the Commission has the power or authority thereunder to furnish and use its own employees to inspect the books and records of the Utility, and to inspect and appraise its property used to serve the public with gas, for the purpose of securing such audits and appraisals as evidence to be used on the appeal brought by the Utility under authority of Art. 6058, to have the Commission on the de novo hearing provided for determine and fix just and reasonable rates for gas sold to the public in said city. Clearly the suit of the Utility is one for a declaratory judgment for the construction of the statutes, and the injunctive relief prayed for is merely ancillary thereto. Abilene & S. R. Co. v. Terrell, Tex. Civ.App., 131 S.W.2d 37, writ refused. The question of whether such ancillary injunctive relief may be granted in a declaratory judgment proceeding is not here involved, because the Utility has not appealed from any denial of any ancillary injunctive relief prayed for, and has therefore abandoned its prayer for such relief. But its suit for the declaratory judgment for the construction of the statutes

involved remains to be disposed of as in declaratory judgments proceedings.

The Commission also contends that under the facts alleged the suit for the declaratory judgment is merely one raising questions as to the practice or procedural matters of how the Commission may obtain and what evidence it may take on the pending appeal and de novo hearing brought before it by the Utility under Art. 6058, to aid the Commission in determining and fixing just and reasonable rates to be charged the public for gas sold in said City of Palacios; and that the declaratory judgment proceeding is not maintainable to adjudicate or determine such alleged procedural errors of the Commission.

Under our foregoing conclusions the suit of the Utility does not raise mere questions of practice or procedural errors of the Commission occurring in the course of the proceeding or hearing of the Utility's appeal under Art. 6058. The pleadings of the Utility clearly raise questions as to the construction of the statutes cited to determine whether the Commission has the power or authority thereunder to so furnish and use its employees to secure evidence to be used on appeals to it under Art. 6058. The questions presented do not relate to mere matters of practice or procedure in taking evidence by the Commission, but relate to the authority of the Commission to invade the books and records, and to go upon and inspect and appraise the Utility's property to secure evidence to be used by the Commission on appeals and de novo hearings brought before it under Art. 6058, to aid it in determining and fixing just and reasonable gas rates for gas sold to the public within the city or town involved on such an appeal. The question to be determined is whether the statutes authorize the Commission to so secure the evidence used by it on appeals and hearings under Art. 6058, by using its own employees to obtain and secure audits and appraisals of the Utility's business in the manner stated. This is not a question of practice or procedure, but one of legal right to so secure and use evidence. It is manifest that if the statutes under which the Commission claims to act do not authorize it to so furnish and use its employees to secure the evidence shown by their audits and appraisals of the business and property of the Utility, then it is illegally obtained evidence and may not be used on appeals and de novo hearings under

Art. 6058 to aid the Commission in determining and fixing just and reasonable gas rates on any such appeal and de novo hearing. The question so pleaded presents a justiciable issue or controversy as to the construction of the statutes; and Sec. 2 of the Uniform Declaratory Judgments Act expressly enumerates questions as to construction of statutes among others which may be determined thereunder, the material portions of which read as follows:

"Any person * * * whose rights, status, or other legal relations are affected by a Statute * * * may have determined any question of construction or validity arising under the * * * Statute, * * * and obtain a declaration of rights, status, or other legal relations thereunder."

That a controversy has arisen in the instant case as to the construction of the statutes under which the Commission claims the authority to use its employees and their audits and appraisals so obtained as evidence on appeals before it under Art. 6058 is not disputed. If the evidence so obtained and used is illegal evidence, then the construction placed upon the statutes by the Commission as authorizing it to so obtain and use the evidence necessarily affects the rights, status and other legal relations of the Utility thereunder. This question of justiciable issue or controversy as to the statutory authority of the Commission to investigate the books and property of the Utility to obtain evidence is illustrated by the rule of the decisions stated in 42 Am.Jur. 413, under title of Public Administrative Law, as follows:

"An officer conducting an attempted investigation, lacking legal sanction, stands no better than any other interloper, but if the investigation is duly authorized, it is no more subject to obstruction than judicial proceedings. An official inquisition to compel disclosures of fact is not an end, but a means to an end, and the end must be a legitimate one to justify the means. An official inquisition into a citizen's private affairs must be for a disclosed and legitimate purpose, and, unless based upon specified grounds, is unlawful in its inception and cannot be made lawful by what it may bring, or by what it actually succeeds in bringing, to light."

The law is settled that courts have inherent power to construe statutes in any action or proceeding where the issue is

justiciably made. The Uniform Declaratory Judgments Act adds nothing to this inherent power of courts to construe statutes, but it furnishes a remedy or procedure of great elasticity to facilitate or aid the courts in the construction or interpretation of the statutes on the application of adverse parties with requisite interest, and as they apply to situations presented.

The manifold uses of declarations of rights or declaratory judgments proceedings for the construction of statutes are illustrated and annotated in 12 A.L.R. 78; 19 A.L.R. 1130; 50 A.L.R. 44; 68 A.L.R. 126; 87 A.L.R. 1232; 149 A.L.R. 1103; Anderson's Declaratory Judgments, pp. 793-798; 16 Am.Jur. 296, Sec. 24, wherein it is stated that declaratory judgments proceedings have been frequently "employed to determine questions as to the construction of statutes * * * ordinances, and other governmental regulations"; and that "the Uniform Act expressly enumerates these questions among others which may be determined thereunder."

A review of the following cases shows that the declaratory judgments proceedings has been maintained for the construction of liquor control and regulation statutes; of Sales Tax Acts; of Itinerant Vendor's Law; of Small Loan Acts, and numerous other statutes which relate to rights of persons arising thereunder: Sandelin v. Collins, 1 Cal.2d 147, 33 P.2d 1009, 93 A.L.R. 956; Jefferson County Distillery Co. v. Clifton, 249 Ky. 815, 61 S.W.2d 645, 88 A.L.R. 1361; Boyer-Campbell Co. v. Fry, 271 Mich. 282, 260 N.W. 165, 98 A.L.R. 827; Woolf v. Fuller, 87 N.H. 64, 174 A. 193, 94 A.L.R. 1067; Family Loan Co. v. Hickerson, 168 Tenn. 36, 73 S.W.2d 694, 94 A.L.R. 664; State v. Grove, 109 Kan. 619, 201 P. 82, 19 A.L.R. 1116. More particularly in point is the case of Railroad Comm. v. Konowa Operating Co., Tex.Civ.App., 174 S.W.2d 605, wherein this court held that the declaratory judgment proceeding was maintainable to determine whether the making of water-oil ratio orders pertaining to marginal wells was within the power delegated to the Commission under oil conservation statutes designed to prevent waste of oil. Also, where as in the instant case, the value of the service rendered by he Utility is an important factor in determining the justness and reasonableness of the rates it charges the public for gas, the public interest in the construction placed upon the statutes is affected, and in consequence there exists a justiciable issue as to whether the Commission, as the representative of the public interest affected, has the power or authority under the statutes to use its employees to investigate and audit the books of the Utility and to investigate and appraise the value of its property. Abilene & S. R. Co. v. Terrell, Tex.Civ.App., 131 S.W.2d 37, writ refused. In so determining and fixing just and reasonable gas rates the Commission acts both in the interest of the Utility and the public to whom it sells gas. Community Natural Gas Co. v. Nattural Gas & Fuel Co., Tex.Civ.App., 34 S.W.2d 900; Railroad Comm. v. Uvalde Const. Co., Tex.Civ.App., 49 S.W.2d 1113. In consequence, if the Commission shall in the performance of its duty to fix just and reasonable rates seek to exercise a power or authority not given by the statutes under which it acts, both the interest of the Utility and the public are affected, and the declaratory judgments proceeding is an effective and speedy remedy provided by the Legislature to adjudicate or declare whether the power or authority sought to be exercised by the Commission come within the provisions of the statutes under which it acts in the premises.

The Commission further contends that the Legislature has provided the Utility with an adequate and exclusive remedy against unjust and unreasonable rates which it might fix on its appeal and hearing under Art. 6058, by an appeal to the courts under the provisions of Art. 6059; and that in consequence the declaratory judgments proceeding is not maintainable in the instant case. Our foregoing conclusions that the Legislature intended by the enactment of the Uniform Declaratory Judgments Act to afford an additional speedy and effective remedy for the construction of statutes, apply with equal force or reason to this point or contention of the Commission. Sec. 1 of the Act provides in the broadest language that "Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Clearly this language means that the old rule that the essential elements of a cause of action were a right, a violation of such right or a wrong, and a remedy are not applicable to the declaratory judgment proceeding. The act particularly

eliminates the old essential element of wrong. It clearly provides or empowers the court to adjudicate or declare the rights of the parties where there has arisen a real controversy before the wrong actually takes place, and "whether or not further relief is or could be claimed." In so providing the Legislature necessarily intended that the court could by a declaratory judgment adjudge or declare the business or statutory relations between parties with requisite interest, and inform them as to their duties, rights, status, or obligations with respect to the justiciable issue or controversy presented. This additional remedy does not supplant any existing remedy to right a wrong actually committed, but affords a speedy and effective remedy against threatened wrong. The rule that declaratory judgment proceeding is an additional remedy is, after a review of the authorities cited, succinctly stated in Anderson on Declaratory Judgments, p. 141, § 48, as follows:

"The correct rule undoubtedly is that enunciated by the Virginia court in the cited case, wherein it is held that the declaratory judgment statutes were intended to supplement rather than supersede ordinary causes of action, and to relieve litigants of the common-law rule that no declaration of rights may be judicially adjudged until a right had been violated. Preventive relief is the moving purpose. Whether or not jurisdiction shall be taken is within the sound judicial discretion of the trial court.

"Differently stated, the declaratory judgment statute offers another procedural method by which a party can call on the courts to adjudicate his rights, but differs little from theretofore existing methods in that it follows scrupulously the rule of due process of law." American Nat. Bank & Trust Co. of Danville v. Kushner, 162 Va. 378, 174 S.W. 777; In re Kariher's Petition, 284 Pa. 455, 131 A. 265.

Manifestly the appeal to the courts under Art. 6059 after the wrong complained of has been done is only a remedy in the nature of a common law action, but authorized by statute. This was the exclusive remedy before the enactment of the Uniform Declaratory Judgments Act. It still exists, but does not conflict with nor is it exclusive of the remedy afforded by the Uniform Act, which gives an additional remedy for a declaration of rights of the parties under the statutes involved before the wrong complained of, if held to be a wrong, is committed. And when the broad language of Sec. 1 is considered in connection with the specific provisions of Sec. 2 of the Act, it is clear that the Legislature intended to authorize declaratory judgments proceedings to "have determined any question of construction * * * arising under the * * * statute and obtain a declaration of rights, status, or other legal relations thereunder, whether or not further relief is or could be claimed."

 By motion the Commission suggests that the questions presented on this appeal have become moot because since this appeal the Commission has held the hearing of the Utility's appeal under Art. 6058, under the express conditions objected to by the Utility in the application for the declaratory judgment, but has not fixed the rates on such appeal for which gas may be sold in Palacios; that the Utility has an adequate remedy at law by an appeal to the court under Art. 6059 with respect to the question of the power or authority of the Commission to use its employees and their evidence in the manner complained of. This suggestion merely raises the same question last above discussed and is controlled by our foregoing conclusion that the declaratory judgment proceeding is an additional effective and speedy remedy provided by the Legislature to adjudicate or declare whether the power sought to be exercised by the Commission comes within the provisions of the statutes under which it acts. This additional remedy does not supplant the existing remedy of an appeal to right an alleged wrong committed by the Commission, but merely affords an additional speedy and effective remedy against threatened wrong by the Commission. The statutory right of appeal from orders of the Commission is in nature a common law suit to right wrong, and in which all questions that could arise may be adjudicated. The Declaratory Judgments Act does not supersede such remedy by appeal, but preventive relief is its moving purpose, and as held by the authorities above cited the taking of jurisdiction in the declaratory proceeding is within the sound discretion of the trial court.

 The questions here presented are public in nature, and the public, the utilities, the Commission, and cities and towns all have an interest in securing the construction of the statutes here involved.

That was the situation when this proceeding was instituted, and jurisdiction thereof was not lost by the fact that the threatened invasion has become an accomplished fact, and therefore injunctive or other consequential relief could not be afforded, since the question presented was one of public interest and of a recurrent character. See Abilene & S. R. Co. v. Terrell, Tex.Civ. App., 131 S.W.2d 37, error refused; Railroad Commission v. Konowa O. Co., Tex. Civ.App., 174 S.W.2d 605; and cited authorities.

■ On its appeal the Utility contends that the court erred in construing the statutes involved as authorizing the Commission to so furnish and use its own employees and their evidence in preparation of and on the appeal brought before it for a de novo hearing under Art. 6058, for a review of the ordinance reducing the rates and to determine and fix just and reasonable rates to be charged by the Utility for gas sold the public in Palacios. More specifically it contends that the jurisdiction, power, or authority of the Commission on such an appeal and de novo hearing is derived solely and exclusively under the provisions of Art. 6058; that the appeal and de novo hearing so provided for are in nature and purpose appellate only; that on such hearing the Commission must be neutral and impartial; that it must receive only such evidence as is offered by the Utility or the city involved, the adversary parties to such appeal and hearing; that the Commission necessarily becomes an adversary party to such appeal and hearing by so furnishing and using its own employees and their evidence in preparation of and on an appeal brought by a utility for a de novo hearing of rate matters under said Art. 6058; and that neither said article nor the other articles cited authorize such practice by the Commission. We think that the Commission has the statutory power or authority claimed by it.

■ It may be again observed that we hold that the only question determinable on this declaratory judgment proceeding is limited to the question as to the construction of the statutes involved to determine or declare whether they give the Commission the power or authority to so furnish and use its own employees and their evidence obtained in the manner heretofore stated in preparation of and on an appeal and de novo hearing brought before it under Art. 6058, to aid it in determining and fixing just and reasonable gas rates to be charged the public for gas sold by a public gas utility. The question so presented relates to the investigatory and inquisitorial powers of the Commission to require the keeping of books, accounts and records by public gas utilities to inspect and audit them and to inspect and appraise their properties used in the public service as an adjunct to the jurisdiction, power or authority of the Commission to regulate, determine and fix just and reasonable rates for gas sold to the public by such gas utilities. There is no contention here made that the Legislature may not confer such power or authority upon the Commission; but the contention made is that it has not done so by the statutes under which the Commission is authorized to regulate, determine, and fix just and reasonable gas rates to be charged by public gas utilities for gas sold to the public for domestic and commercial uses. The questions urged as to whether the Commission may not be impartial, or may be unfair on such appeal and de novo hearing, or as to the manner of taking evidence, whether legal or not, or conducting the hearing on such an appeal are merely procedural matters, and the declaratory judgment proceeding is not maintainable to adjudicate or determine such alleged procedural errors. They are matters, if reviewable at all, which must be reviewed on the court appeal under Art. 6059, where the sole judicial issue presented and determinable is whether the rates determined and fixed by the Commission are just and reasonable. See Railroad Comm. v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022; Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407; Lone Star Gas Co. v. State, 137 Tex. 279, 297, 153 S.W.2d 681.

■ Particularly emphasizing this question concerning limitation on the use of the declaratory judgment, we quote from Anderson's "Declaratory Judgments," p. 148, § 53:

"The declaratory judgment action cannot be invoked for the determination of procedural rules or rights * * * in a pending suit. The reason * * * is that such questions should be determined by the court in which such action is pending or is to be filed."

This rule applies with equal force to proceedings before administrative bodies;

and applies to all purely procedural matters (here a question of the admissibility of evidence) whether or not such matters involve the construction of a statute. If the issue here were solely whether the evidence, however obtained, were admissible in the proceeding before the Commission, the matter would not constitute a proper subject for a declaratory judgment. But the issue of whether the Commission has the power under Arts. 6050–6066 to invade the privacy of the Utility by an examination of its books, records and physical properties, where the sole purpose of the invasion is using the evidence thus obtained in its rate-making function in reviewing the action of a municipality under Art. 6058, does clearly constitute a justiciable controversy as the basis of a declaratory judgment, where the right is asserted and its exercise threatened by the Commission, on the one hand, and denied by the Utility on the other.

Also, as preliminary, it may be observed that the appeal and de novo hearing provided for under Art. 6058 is not in nature and purpose appellate only as an appeal to the court would be appellate only. The statute specifically provides that "the Commission shall hear such appeal de novo," and shall make such order therein "as it may deem just and reasonable." This language means that the Commission shall hear the matter anew, afresh, just as if nothing had theretofore transpired, and as if the matter had been originally filed with it, and that the Commission shall on such appeal and de novo hearing determine and fix just and reasonable rates to be charged the public for gas by the appealing utility. The rule is settled that Art. 1119 (applicable as in the instant case to cities or towns incorporated under general law), and Art. 6058 furnish the method of procedure for the adjustment, or for determining and fixing gas rates to be charged the public by a public gas utility. By such procedure the rates to be charged are determined and fixed before resort may be had to the court under Art. 6059, for the limited or sole purpose of adjudicating the question of whether the rates so determined or fixed are just and reasonable. On such an appeal the court has no right or power to fix gas rates. Lone Star Gas Co. v. State, 137 Tex. 279, 297, 153 S.W. 2d 681. It has no such investigatory and inquisitorial powers as claimed by the Commission. Practically all boards or commissions' laws reviewed confer such powers as an adjunct to their regulatory or rate-fixing powers. This power and facilities of administrative agencies or commissions to investigate, inspect books and accounts, and to control the range of the investigation, is one of the distinctive functions which set them apart from the courts. 42 Am.Jur. 323. We construe our statutes as conferring upon the Commission the investigatory and inquisitorial powers sought to be exercised by it.

The Utility alleges that it is a "gas utility" or a "public utility" under the provisions of Art. 6050, which declares that such gas utility business is a monopoly and is "affected with the public interest and subject to the jurisdiction, control and regulation of the Commission as provided herein." The Utility sells gas through pipe line operations and under the provisions of Art. 6051 "is a monopoly and shall not be conducted unless such gas pipe line so used in connection with such business be subjected to the jurisdiction herein conferred upon the Commission," and that "the Attorney General shall enforce this provision by injunction or other remedy." Art. 6052 requires that such gas utility shall keep an office in one county in this state and shall keep therein all books, accounts, papers, records, vouchers and receipts which the Commission shall require, and that none of which shall be removed from the state except on permission of the Commission. Art. 6053 provides, among other things, that the Commission after due notice shall fix "fair and reasonable rates," and establish a fair and equal division of the rate proceeds between producing and transporting pipe line utilities and distributing or selling pipe line utilities. Art. 6053a gives the Commission power to investigate and regulate the use of malodorants by gas utilities. Art. 6054 provides that all agreements of pipe line utilities as to prices, rates, etc., shall be subject to review by the Commission after notice. Art. 6055 provides, among other things, that gas utilities shall refund excess charges "paid over and above the proper rate or charge as finally determined by the Commission from and after the date of the filing of such complaint." Art. 6056 provides that the Commission may require reports of gas utilities showing the quantity of gas distributed or sold, the source and number of wells of supply, the pressure maintained and the equipment used,

and such other matters "pertaining to the business as the Commission may deem pertinent." Art. 6057 provides that the Commission shall not discriminate in favor of or against those engaged in the several phases of the pipe line utility business, nor as to rates charged for gas or service rendered. Art. 1119 authorizes cities or towns incorporated under general law to fix or reduce gas rates of the utility selling gas within such cities or towns. Art. 6058 provides that such a gas utility may appeal to the Commission for a review of any rates fixed or reduced by the governing authorities of such cities or towns; and that on such appeal and de novo hearing the Commission shall determine and fix just and reasonable rates. This provision gives the Commission the authority to fix the final rates to be charged by the appealing gas utility. This is the statutory method of procedure for the adjustment and fixing of gas rates by the Commission under the statutes. Coleman Gas & Oil Co. v. Santa Anna Gas Co., Tex. Com.App., 67 S.W.2d 241; Community Natural Gas Co. v. Natural Gas & Fuel Co., Tex.Civ.App., 34 S.W.2d 900; State v. Public Service Corp., Tex.Civ.App., 88 S.W.2d 627. This method of procedure must be followed before resort to the court under Art. 6059, for the limited purpose of a judicial determination of the issue of whether the rates so fixed by the Commission are just and reasonable. Art. 6060 provides for a gas utility tax, the amount thereof, quarterly reports to the Commission showing the gross income received from all gas utilities doing business in this state. Art. 6061 provides that the Commission shall report annually to the Governor all of its proceedings with gas utilities, receipts of gross income taxes, and the expenditures made by it under the statutes, and the names, titles, etc., of its employees and the amounts expended for their salaries and traveling expenses. Art. 6062 provides for penalties for violation of any valid order of the Commission. Art. 6063 provides for the appointment of a receiver of gas utilities for the reasons and under the terms stated. Art. 6064 provides for the employment and use by the Commission of a supervisor in the performance of its duties under said statutes. Art. 6065 provides for the appointment of employees by the Commission, the material portion reading as follows:

"The Commission may employ and appoint, from time to time, such experts, assistants, accountants, engineers, clerks and other persons as it deems necessary to enable it at all times to inspect and audit all records or receipts, disbursements, vouchers, prices, pay rolls, time cards, books and official records, to inspect all property and records of the utilities subject to the provisions hereof, and to perform such other services as may be directed by the Commission or under its authority."

And Art. 6066 provides for the limitation of expenditures by the Commission with respect to salaries of employees, etc., and other expenditures in exercising and enforcing the provisions of the foregoing statutes, or in exercising power or authority given under this subdivision (Natural Gas) of the foregoing statutes.

By the plain and appropriate language the foregoing provisions of the Act under which the Commission derives its jurisdiction, power and authority to regulate and control the business of a gas utility and to fix its rates for gas sold to the public, confer investigatory and inquisitorial power and authority upon the Commission to furnish and use its own employees to inspect and audit the books and records it may require the gas utility to keep, and to inspect and appraise its property used to serve the public with gas, for the purpose of securing such audits and appraisals as evidence on appeals to it under Art. 6058, to aid it on the de novo hearing provided for to determine and fix just and reasonable rates for gas sold by the appealing gas utility to the public in the cities or towns involved on such appeals. Art. 6058 clearly provides the method of procedure to invoke the jurisdiction of the Commission to determine and fix final, just and reasonable rates for gas sold the public in such cities and towns, and other matters not here involved; and the other articles clearly confer investigatory and inquisitorial power and authority as an adjunct of the rate-fixing and regulatory powers of the Commission. Except for the purpose of conferring such investigatory and inquisitorial powers on the Commission to aid in fixing just and reasonable rates for gas sold to the public, or to aid it in other regulatory powers given, no conceivable purpose or reason exists for the authority of the Commission to require the keeping of books, records, etc., by the utilities, nor

for the full and complete control and supervision of their properties. Nor does any other purpose or reason exist for the powers conferred upon the Commission to appoint and employ, from time to time, "experts, assistants, accountants, engineers, clerks and other persons as it deems necessary to enable it at all times to inspect and audit all records or receipts, disbursements, vouchers, prices, pay rolls, time cards, books and official records, to inspect all property and records of the utility subject to the provisions hereof, and to perform such other services as may be directed by the Commission or under its authority." And since the general provisions of the Act and the provisions of Art. 6058 confer full and complete power and authority upon the Commission to fix just and reasonable rates for gas sold to the public, it is manifest that the Legislature intended to confer upon the Commission the investigatory and inquisitorial powers which it seeks to exercise and are here complained of.

In the case of State v. Public Service Corporation, Tex.Civ.App., 88 S.W.2d 627, it is held that Art. 1175 confers the same jurisdiction, power and authority upon a city operating under a home rule charter to fix or reduce gas rates of a gas utility by ordinance, as is conferred by Art. 1119 upon cities and towns incorporated under general law; that the primary purpose of such statutes and the statutes under which the Commission derives its power to fix gas rates, and its rules and regulations promulgated thereunder, is to effectuate just and reasonable ultimate consumer or burner tip rates for which natural gas may be sold to the public; and that the Commission may require such gas utilities to keep books and records in any manner deemed necessary so that the Commission would be able to fix just and reasonable rates, and so that any other phase of its business may be controlled or regulated under the power given by Arts. 6023, 6050 to 6066, both inclusive. The foregoing statutes are in pari materia, and when so construed we think they clearly show that the Legislature intended to confer the investigatory and inquisitorial powers here sought to be exercised by the Commission. And in the case of State v. Lone Star Gas Company, Tex.Civ.App., 129 S.W.2d 1164, it is held that the Commission has the power to furnish and use its employees and their evidence in the manner here complained of by the Utility, which holding has never been questioned so far as we are able to ascertain.

The argument of the Utility is that if the investigatory and inquisitorial powers sought to be exercised by the Commission herein are given by the statutes, such powers or authority must be put into the statutes by implication; and that departmental construction and bills in two sessions of the Legislature, neither of which became law, show that neither the Commission nor the Legislature thought the statutes authorized the Commission to use its employees and their evidence in the manner complained of by the Utility. No act of the Commission is shown which could be regarded as a departmental construction that the statutes did not give it the power or authority claimed by it. The unenacted bills of the Legislature cannot be considered as a legislative interpretation of the statutes. The rule that departmental construction of a statute over a long period of time is given great weight has no application, because there is no ambiguity in the provisions of the statutes. Under our foregoing interpretation of them they clearly provide that the Commission has the power and authority to furnish and use its employees and their evidence on an appeal and de novo hearing before the Commission under Art. 6058 as an adjunct to the jurisdiction, power and authority given the Commission by Arts. 6050 to 6066, both inclusive, to completely control and regulate and to fix ultimately the final gas rates to be charged by a gas utility appealing under Art. 6058. No further discussion of the matter need be here made.

The judgment of the trial court is affirmed.

Affirmed.