Rockingham, }
Jan. 4, 1927. }

### STATE v. FREDERICK W. UHRIG.

Under P. L., c. 162, ss. 29 and 30, one who keeps crude petroleum or any of its products for sale in reservoirs and under the conditions prescribed by section 29 is not required by section 30 to obtain a local license.

COMPLAINT, by the city marshal of Portsmouth, for violation of P. L., c. 162, s. 30. Plea, not guilty. The state admitted compliance with section 29 of the chapter. In advance of trial and without ruling, *Matthews*, J., transferred the question of the requirement of a local license.

*Stewart E. Rowe*, solicitor, and *Joseph D. Sullivan*, for the state.

*William H. Sleeper*, for the defendant.

ALLEN, J. The question transferred involves the construction of P. L., c. 162, ss. 29 and 30. The essential portions of the sections are as follows:

"29. STORAGE. Crude petroleum or any of its products may be stored, kept, manufactured or refined, in . . . buildings specially adapted to the purpose, . . . Any person keeping such articles in any other kind of building, except as provided in the following section, shall be punished as provided in section 26.

30. LICENSES. No person shall manufacture, refine, mix, store or keep for sale any oil or fluid composed wholly or in part of any of the products of petroleum, in any city or town, except as provided in this chapter, without a license from the . . . city or . . . town."

Section 31 provides a fine for violation of section 30.

Since the corresponding sections of the original act (Laws 1873, c. 44, ss. 5 and 6) have undergone no material changes in respect to the question in the subsequent general revisions of the statutes or by

special amendment, determination of the meaning and effect of that act will answer the inquiry.

Each section expressly excepts its application when there is observance of the other, and their alternative rather than cumulative operation could hardly be more positively stated. Their enactment with reference to each other is clear and definite. Section 5 relates to crude petroleum and its products while section 6 relates only to such products, with the result that there must be in all cases observance of the regulations of section 5 in the manufacture, storage and keeping of crude petroleum. But the option as given by the mutually excepting clauses of observing section 5 or of obtaining licenses under section 6, in respect to petroleum products, is not doubtful.

It is claimed that the words "keep for sale" as used in section 6, while in contrast only the word "kept" is used in section 5, show a requirement of the local license when petroleum products are kept for sale. It is a sufficient answer to the claim to say that the keeping as provided by section 5 is not limited in purpose but is broadly a keeping for any purpose, and hence is inclusive of a keeping for sale.

The amendment of section 6 enlarging from its application the exception of section 5 to any exception of the chapter of which it is now a part appears to have been made out of general caution when the act was incorporated as a part of the chapter entitled "Sales of Certain Articles" in the General Laws (G. L., c. 122), rather than with any particular provisions of the chapter in mind. In any view it is not material on the question being considered, since the exception is in terms more, and not less inclusive.

Examination of the scope, purposes and application of the sections only confirms the plain meaning of their language. The manner of handling petroleum and its products as prescribed in section 5 includes the use of detached buildings "specially adapted to the purpose," not to be in any part occupied as dwellings, to be surrounded by embankments sufficient to prevent any overflow on other premises, and to be separated from other buildings less than fifty feet distant by stone or brick walls of specified minimum height and thickness. The licenses authorized by section 6 are good only until the April following their issuance and are revocable at any time by the licensor. The comparative permanence and definiteness of conditions under section 5 in contrast with the limited duration of licenses under section 6 and the adaptation of the licenses to the

special situation in each case explain the clauses in making a compliance with either section sufficient. It is not to be assumed that the legislature intended that one who made the permanent and substantial structures specified in section 5 should have the right to use them for the statutory purpose dependent upon revocable licenses renewable annually and stating how and where they might be exercised. The legislature, making its own test of adequacy in section 5, yet permitted other tests in place thereof by section 6, except as to crude petroleum. Any other construction would not only be at variance with the ordinary meaning of language but would lead to arbitrary and unreasonable results.

The defendant, having acted in observance of the standards established by the legislature, was not required to obtain the local license, and is not guilty.

*Defendant discharged.*

All concurred.