Hillsborough, }
June 28, 1934. }

FRANK WOOLF & a. v. ENOCH D. FULLER & a.

*Timothy F. O'Connor* and *Myer Saidel* (*Mr. Saidel* orally), for the plaintiffs.

*Francis W. Johnston*, attorney-general, *H. Thornton Lorimer*, assistant attorney-general, and *John J. Sheehan*, solicitor, (*Mr. Lorimer* orally), for the defendants.

*Laurence I. Duncan* and *Robert W. Upton*, by brief, as *amici curiae*.

ALLEN, J. The objection to the form of the proceeding is that the plaintiffs have adequate remedy at common law. The statute requires itinerant vendors to pay a state license fee and to deposit a specified sum with the secretary of state for specified purposes. Violation of the statute is made a misdemeanor. It also requires the payment of a local license fee in the place where the business is conducted, under penalty of a fine for each day of neglect or refusal. The bill alleges irreparable damage to the plaintiffs' business and credit if the defendants should carry out their threat to prosecute unless the store was closed.

Any right the defendants may have had to seek the closing of the business no longer exists. The plaintiffs are not now itinerant vendors. If they were such before or when the bill was brought, lapse of time since then has terminated a business of that character. Their business as established storekeepers may not be interfered with for a wrongful conduct of it before, as the defendants say, they became such. The defendants now seek no such interference.

No injunction against the collection of the state license fee is sought. Nor is any allegation made of the need of protection against the city of Manchester by reason of the opening of the store without payment of the local license fee. Neither the city nor its tax collector, upon whom the statute imposes the duty of collecting the local fee, is a party to the bill. The right of relief in equity from paying an illegal state tax or a state or local license fee, not recoverable if paid without statutory provision for recovery, is therefore not relied upon in support of the bill. Nor is it alleged that there was any existing demand when the bill was filed for the deposit with the secretary of state to be made.

In consequence, no irreparable damage may now result unless from the prosecution of the plaintiffs as misdemeanants. Authority is to be found for enjoining the prosecution of an unconstitutional statute when the prosecution involves a direct invasion of property rights resulting in irreparable loss. 32 C. J. 282, *s.* 447, and cases cited. Such an invasion of rights from prosecution alone is not here alleged, and may not be asserted upon any facts pleaded.

But if the plaintiffs may not now be entitled to injunctive relief, the bill may be amended by transforming it into a suit for a declaratory judgment. The procedural situation is in all respects like that in *Tirrell* v. *Johnston*, 86 N. H. 530. The plaintiffs make a claim of "a present legal . . . right" (Laws 1929, *c.* 86) not to be prosecuted. The essential issue relates to the validity of the statute as an exercise of the police power, either generally or in application to the plaintiffs, and such an issue may be determined under the declaratory judgment act. *Faulkner* v. *Keene*, 85 N. H. 147, 152-157. The issue has been argued and is to be considered. *Tirrell* v. *Johnston*, *supra*.

Upon the question whether the plaintiffs come within the statutory definition of itinerant vendors, the act and its amendments which deal with such persons in terms include them. No distinction, if one might be valid, is made between residents and non-residents either of the state or of the town or city where the business is carried on. Nor, in the amendments, is any difference expressed between those opening a store for temporary occupancy and those opening one for a period intended to be more than temporary. In their literal language, their effect is to eliminate intent in the test of a temporary character of the business opened. They are silent in respect thereto and the exceptions therein of storekeepers engaging in business for defined lengths of time indicate that external and physical facts are alone to control in determining whether the business is temporary within the meaning of the word as the legislation employs it. Since it defines a temporary business, there is no inconsistency in either of the amendments because of the fact that the definition is not that usually given such a business. Unless by force of a special rule of construction available in passing upon the constitutionality of legislation, to be later stated, the plaintiffs are within no exception of the act.

With reference to the state constitution, itinerant vendors are a subject of the exercise of the police power in some promotion of the general welfare. "The object of the statute would seem to be to protect the public from the imposition liable to be practised upon it by itinerant vendors who are not hawkers or peddlers because hiring, leasing or occupying a building for their business, but who sell temporarily or transiently in one place, or in travelling from place to place, goods, wares, or merchandise, and who might naturally be supposed to be free, to some extent at least, from the restraints and influences inducing fair and honest dealing which apply to persons

established permanently in trade in a given locality." *Commonwealth* v. *Crowell*, 156 Mass. 215, 216.

That the legislation may be of some public benefit is not enough, under the state constitution, to give it validity. In addition, it must not impair or destroy private rights guaranteed by the constitution. While in its valid exercise the police power may either forbid conduct or permit it under regulation (*State* v. *Roberts*, 74 N. H. 476, 479, and cases cited), and while it is said that "The court does not inquire into the expediency or wisdom of such legislation" (*Ib.*, 480, and cases cited), yet it is "subordinate to the equality of privilege and of burden secured by the bill of rights and guaranteed by the constitution" (*State* v. *Jackman*, 69 N. H. 318, 332). "And although the reasonableness of a statute relating to public welfare is not ordinarily a question on which the court can properly pass (*State* v. *Jackson*, 71 N. H. 552, 554; *Sundeen* v. *Rogers*, 83 N. H. 253, 256, 257, and cases cited), the right of acquiring and possessing property is guaranteed to all persons by the constitution (Bill of Rights, *art.* 2) . . . ." *State* v. *Company*, 84 N. H. 322, 323. ". . . an equal property right is so specifically guaranteed in the bill of rights that it necessarily limits all subsequent grants of power to deal adversely therewith." *Eyers &c. Co.* v. *Gilsum*, 84 N. H. 1, 21. "The true view is that both of these provisions of the fundamental law [one granting legislative power and one reserving individual rights] are to be considered together as interdependent, the one qualifying and limiting the other; otherwise it would result that due effect could not be given to both at the same time. Neither is supreme in a sense that would deprive the other of its effectiveness as a part of the fundamental law." *State* v. *Ramseyer*, 73 N. H. 31, 34. "The test usually employed in this state to determine the constitutionality, not of the purpose the legislature had in view when it enacted a statute but of the means it employed to effectuate a constitutional purpose, is to inquire whether the restrictions it imposes on rights secured to individuals by the bill of rights are unreasonable (*State* v. *Normand*, 76 N. H. 541, 543), and not whether it imposes any restrictions on such right." *Carter* v. *Craig*, 77 N. H. 200, 205.

While the courts may not condemn police legislation because they regard it as inexpedient or unwise, yet the expediency is to be taken into account, in respect to the importance of the public benefit the legislation seeks to promote, as well as the means it adopts to secure the benefit. Expediency involves utility, and if the legislation is directed to a public interest of minor concern, while imposing serious

restrictions in regulation or bar of guaranteed rights to accomplish the interest, it tends to show its unreasonableness. On the other hand, the more insistent the public need of police measures, the more may private rights be restricted to satisfy the need. A statute forbidding the kindling of fires or the use of matches in the woods to prevent forest fires is more sustainable when limited in application to seasons and periods of fire danger. It is not that the courts say the legislation is inexpedient and therefore void, but that, finding the extent or character of the expediency, they then balance it on the scales of reasonableness with the seriousness of the restriction of private right sought to be imposed. The reasonableness of legislation is to be found if it may be, but "the legislature cannot by its mere fiat make that reasonable which is indisputably unreasonable." *Carter* v. *Craig, supra,* 206.

Based upon the policy of upholding legislation so far as possible and in pursuance of the presumption that the legislature intends to pass no invalid laws, there is a principle of construction that when a statute, unsustainable in its literal terms, is valid in some of its applications but not in others, it is to be read as though the latter were excepted from its operation. *Kennett's Petition,* 24 N. H. 139, 141; *Opinion of the Justices,* 41 N. H. 553, 555; *Aldrich* v. *Wright,* 53 N. H. 398, 399; *Cheshire &c. Co.* v. *State,* 63 N. H. 167, 169; *Holt* v. *Antrim,* 64 N. H. 284, 286; *State* v. *Jackson,* 69 N. H. 511; *State* v. *Jackson,* 71 N. H. 552, 556; *Goodrich &c. Co.* v. *Howard,* 86 N. H. 512. The principle, however, is not to be applied if it gives the statute a meaning the legislature did not intend, either by addition to or subtraction from its terms (*State* v. *Gerry,* 68 N. H. 495, 503; *Canaan* v. *District* 74 N. H. 517, 541), and if it is impossible to tell what part of a statute was intended to be operative when some of its provisions are unconstitutional, it is wholly invalid (*Opinion of the Justices,* 76 N. H. 601, 604, 605; *Williams* v. *State,* 81 N. H. 341, 353).

Viewing and analysing the legislation under consideration in the light of the foregoing tests and measures of validity, the act in defining itinerant vendors divides them into two classes according to the temporary or to the transient course and character of their business of selling merchandise from stock or by sample. To be within either classification, one must hire or occupy a building or structure for the exhibition and sale of the merchandise. P. L., *c.* 158, *s.* 1. Commercial travelers and selling agents making sales to dealers are excepted, as too are hawkers and peddlers. *Ib., s.* 3. By the 1931 amendment (Laws 1931, *c.* 50) those whose stock in trade has been

assessed for taxes for the current year are also excepted. *S.* 3. Another exception of those whose place of business is open for a period of nine months in each calendar year (*Ib., s.* 1) is changed by Laws 1933, *c.* 48, to an exception of those whose place of business was open for three months continuously during the previous calendar year.

Thus, by the literal terms of the law, no one may open a store except as an itinerant vendor unless he meets the conditions relating to business in the preceding year or unless his stock in trade has been assessed for taxes during the current year. His purpose to run the store for an extended or indefinite time is immaterial, as is also his financial credit, the nature of his business as a storekeeper or merchant, and the value of his stock of goods. He is not on the same footing as the established storekeeper. Although in fact going into his venture with the purpose of becoming established, he is classified with those conducting a temporary or transient business. The required payments of a state license fee of $25 and a local one of three per cent of the value of his stock and the required deposit with the secretary of state of $500 as security for possible creditors and other purposes subject him to real and substantial burdens from which the established storekeeper is exempt. The exclusion of those whose stock has been assessed for taxes in the year of opening is another feature of contrast.

As between the established storekeeper and one opening a store either with or without the purpose that it shall become established, there is no substantial difference in any public need to regulate them. The suggestion that the latter's credit is ordinarily more doubtful than the former's is undeserving of acceptance. Common knowledge is all to the effect that the difference is a wholly indecisive and negligible factor of credit. Credit depends almost entirely upon resources, character and ability. Any legislative finding or assumption to the contrary would be an unreasonable disregard of the fact. No reason aside from securing responsibility has been advanced or is perceived for the distinction.

The drastic force of the law in its literal inclusion of all who open stores, with the exceptions of those whose stock is taxed and those who have run their stores for some part of the previous year, is apparent in its resulting burden upon the innocent to insure against the escape of those properly subject to it. Itinerants present some menace to the public if unrestrained, which is absent in the case of one opening a store. By the inclusion a temporary storekeeper is placed at a disadvantage with the established one, although the fac-

tors of honesty and reliability are even. A sort of probationary term for one opening a store to entitle him to the confidence of the public given established storekeepers tends to impair his competitive standing with them, thus placing upon him a burden in addition to that of fees and deposit. He becomes unfairly classified with those of doubtful credit, when fairly he should be on legal equality with those whose credit needs no regulation.

The law goes to such an extreme that if an established merchant moves his store to a new location before his stock is assessed for taxes in the year in which he moves, he becomes classified with itinerants. A purchaser of an established business is also treated as one, regardless of the continuance of the business in the same location. It would seem that a receiver of a stock of goods hiring a store in which to sell them is another. From the chain store concern opening a new store, after having many established, to the farmer's boy and girl who sell flowers, fruit and vegetables at a structure by the roadside, illustrations may be multiplied. Even the hawkers and peddlers act (P. L., c. 157, s. 1) permits the sale of one's own produce from place to place without procuring a license.

In another respect the law accomplishes unreasonable discrimination. As already appears, an itinerant vendor whose stock has been assessed for taxes for the current year is excepted. It follows that one commencing business during the first three months of the year may be excepted, since his stock is not taxable until April 1, but if he waits until then, the assessment is effective to except him. It is suggested that the assessment gives the public and creditors security measurably equivalent to that afforded by the license fees and deposit. The suggestion seems strained. Payment of the tax is not required in order to bring one within the exception. All persons are taxable on their stock in trade if they have any, and confidence in an itinerant vendor having no purpose of permanency in opening his place of business is not appreciably enhanced or inspired because his stock has been assessed. An assessment for taxes is by itself no basis for credit. Furthermore, a merchant moving during the first quarter of the year or one buying out another in the period would remain without the benefit of the exception.

These results of attempts at adjustment among persons opening stores make manifest their unreasonableness and aid in showing that none of such persons may fairly be classified with those who are vendors doing business which is in fact itinerant in character. The attempts in themselves acknowledge that all opening stores may not

properly be classified with itinerants, without recognition of the fact that the real trouble is in including any.

The argument that an itinerant vendor may readily escape the regulations of the law by a false claim difficult of disproof that he is a temporary storekeeper, furnishes no sufficient reason for imposing the regulations properly made conditions for his engagement in his business upon those not therein engaged. The difficulty of proof is not formidable, and is more assertive than actual. The intangible nature of intent is ordinarily not elusive, and attendant circumstances usually aid in furnishing satisfactory evidence about it. In the event of falsehood by which an itinerant vendor avoids compliance with the law he remains liable for the penalties for its violation, and the wrong to the public may in some measure be atoned. The fact that status may be difficult of proof does not authorize the legislature to fix a definition for it which includes many who are not of the class.

The right to open a store for only a temporary conduct of the business is as fundamental as the right to carry on an established business. The legislature may not classify with itinerants those who are not such in fact. Sales in itinerancy may be regulated because of the elements of travel and wandering. One may not be treated as though these elements were attributes of his business when they are entirely lacking. If in police protection legislation making distinctions among those opening stores may be valid, it must be by separate and special treatment, adapted for the purpose and without confusion with unrelated subjects of classification.

The law's classification of those opening stores with those who are itinerant vendors in fact is not sustainable, either as to all of them or to certain groups of them. The discriminations against them in favor of the established storekeeper are too heavy in proportion to such slight interest as the public may have for the classification.

Of the guaranteed rights that of equality holds high place in the list. Discrimination of one citizen in favor of another is beyond legislative authority to make, whether legislation expresses it in terms or produces it in result. Classification must be reasonably adapted to secure a legitimate public interest. *Opinion of the Justices*, 85 N. H. 562, 564, and cases cited. Whether one is burdened when others are not or whether they have benefits not given to him, no imposition of the burden or loss of the benefit may be justified if he is wrongly classified. "There must be some substantial foundation and basis therefor." *Seaboard &c. Ry.* v. *Seegers*, 207 U. S. 73, 76. "... a classification, to be valid, must be based on substan-

tial distinctions which make one class so different from another as to suggest the necessity for different legislation with respect thereto." *Davis &c. Co.* v. *Board of Commissioners,* .192 Ind. 144. "The fundamental rule of classification is that it shall not be arbitrary, must be based on substantial distinctions and be germane to the purpose of the law." *Kelley* v. *Boyne,* 239 Mich. 204.

The right to property includes the right to acquire it as well as to possess it. "No proposition is now more firmly settled than that it is one of the fundamental rights and privileges of every American citizen to adopt and follow such lawful industrial pursuit, not injurious to the community, as he may see fit." *People* v. *Marx,* 99 N. Y. 377, 386, cited in *State* v. *Ramseyer,* 73 N. H. 31, 35.

The plaintiffs are not liable to prosecution for violating the law, because it is unconstitutional in respect to them. How far it may be inapplicable to others who are within its literal terms, and how far a license fee may be demanded as a condition to engage in a business which, while subject to regulation, may not constitutionally be forbidden, are inquiries to which, by the disposal of the case, no answer is required. No opinion that the legislation is invalid in its entirety is expressed; and any effect, prospectively or retrospectively, of the recent amendment to the legislation (approved June 4, 1934) enacting that any invalidity of any part of it or in any application of it shall not affect the remainder of it in other applications, is unconsidered. "In drawing the line which separates the field of arbitrary interference with protected rights of property and freedom in personal action, from that of protective legislation in behalf of public safety, each case must fall on one or the other side in accordance with its particular circumstances." *State* v. *Feingold,* 77 Conn. 326. All that is decided is that the law is invalid as to those occupying a place of business for the sale of goods when they are not engaged in the business as itinerants.

The conclusion also renders unnecessary any decision whether the legislation in part or in whole or in any of its literal applications is in conflict with the federal constitution.

*Case discharged.*

All concurred.