Coös,
June 21, 1938. }

GEORGE E. STONE & a. v. EUGENE P. CRAY, & a.

*Bernard Jacobs* (by brief and orally), for the plaintiffs.

*Murchie, Murchie & Blandin* (*Mr. Alexander Murchie* orally), for the defendants.

ALLEN, C. J. The case should be amended by substituting for the plaintiffs the Town of Lancaster. The selectmen are not entitled to relief. Although they are the proper officials to institute the proceeding (P. L., c. 42, s. 67), it should be in the name of the town. It is their matter for action only in behalf of the town as the real party seeking the injunction.

The order allowing the supplemental bill to be filed was not erroneous. It set forth a vote of the town amending the town's original zoning ordinance and passed at a date subsequent to the first hearing on the bill. Pleadings to present new matter in the proceeding were proper. "The more general and approved practice is, . . . that if the defendant [the plaintiff in the equity suit] has discovered any new matter of which he would avail himself, or when an event happens subsequent to filing an original bill, which gives a new interest or right to a party, it should be set out in a supplemental bill." *Gove* v. *Lyford*, 44 N. H. 525, 528. The requirement that such a bill may be filed only on motion (*Ashuelot R. R.* v. *Railroad*, 59 N. H. 409, 410) was here observed, and the finding of sufficient cause therefor seems demanded. In *Clark* v. *Society*, 46 N. H. 272, cited by the defendants, it is conceded (274) that if discretion is "cautiously exercised," matter which "substantially makes a new case" when "the cause has come to a hearing" may be pleaded. The right to an injunction here depends upon the facts existing at the time of final hearing, and the first hearing on the merits was not so effective a bar to the reopening of the case that, to accomplish justice, the bar might not be removed. It follows that the merits of

the case are to be determined as though the original and supplemental bills constituted a single pleading.

The defendants' attack on the town's zoning ordinance is understood to rely upon two broad grounds. One is that the act authorizing local ordinances (P. L., c. 42, ss. 48-68) contains requirements for the adoption and provisions of the ordinance which have not been observed and fulfilled. The other is that no valid ordinance can deprive them of the right which they assert. They argue that the police power cannot be exerted to that extent.

Upon this latter ground, no case of undue infringement of property rights is made out. The general welfare may be tested by considerations of stabilization, orderliness and development in the forms, branches and grouping of the elements of residence, business and industry in community life. ". . . the rule that, where any fair reason could be assigned for bringing legislation within its [the police power's] purview, the question of justice was for the legislature alone, has been consistently followed. *State* v. *Griffin*, 69 N. H. 1, 22, *et seq.*, and cases cited; *Barber* v. *School Board*, 82 N. H. 426, 428, and cases cited." *Sundeen* v. *Rogers*, 83 N. H. 253, 257. A community's prosperity may depend upon convenience and expediency in the arrangement, allocation and layout of the diversified uses of property therein, as well as upon the orthodox reasons of health, safety and morals. It is true that "the boundaries [of the police power] are to be determined by a consideration of specific instances as they are presented" (*Sundeen* v. *Rogers, supra*, 258), but the defendants have not demonstrated that the use they propose to make of their property may not be enjoined in furtherance of the town's welfare.

The argument of unjust discrimination in the permission of the continuance of existing conditions while new or additional ones of the same type or kind are forbidden, overlooks the public right to prevent their increase although it may or does not order that existing ones shall cease. Classification by which unsuitable conditions are restrained within their existing extent is not unreasonable. The hardship of taking away an established use may well be regarded as greater than of prevention of a new use. The seriousness of the restriction upon the private right is to be considered in balance with the expediency of the public interest. *Woolf* v. *Fuller*, 87 N. H. 64, 68, 69. It is reasonably just to classify between existing use and proposed use although otherwise the uses may be the same.

In respect to the claim of non-compliance of the ordinance with the zoning act, one point taken is that the zoning commission required by the act (s. 53) to be appointed and to recommend district boundaries and regulations to be enforced therein, in its report went no farther than to advise that the erection of a certain kind of buildings within the district defined by the report be prohibited. It is argued that no proposed regulations were submitted with the report although they were required as a statutory condition for the validity of the report and of action upon it.

But restrictions are regulations within the clear meaning of the act. While power "to regulate and restrict" (ss. 48, 49, 51, 52) is granted, restrictions are embraced in regulations, as the latter word is employed elsewhere in the act (ss. 49, 50). A legislative intent to distinguish between the words is not found. Any restriction is a regulation, and the statutory language in this respect is of redundancy and synonyms. The report was sufficient in respect to proposed regulations in restriction of use as well as in respect to the boundaries of the zoned district.

The defendants further claim that in the original vote adopting the zoning commission's report no regulations were established providing for the grant of special exceptions to the terms of the vote by the board of adjustment to be created. By the act (s. 54) the "local legislative body [here the town meeting] shall provide for the appointment of a board of adjustment, and in regulations and restrictions adopted pursuant to the authority hereof shall provide that the said board may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained." By a later vote the town authorized the board of adjustment to permit the erection, enlargement, alteration, or reconstruction of the kind of buildings affected by the original vote, and prescribed conditions under which the permission might be given. The defendants say that the conditions bar them from opportunity to show a case of special exception relieving them from the application of the terms of the votes.

It is argued that this opportunity is furnished by the act (s. 60) giving the board certain powers. But in respect to special exceptions the board may decide only those which the vote establishes and upon which by the vote they are required to pass (s. 60, II). Only in cases of appeal from the orders of an administrative official may

they authorize a "variance" from "a literal enforcement" of the ordinance (s. 60, I, III, IV). Clearly the act distinguishes between exceptions and variances. The former are of relief from the operation of the ordinance, while the latter are of administrative orders. The defendants seek no variance of such an order; their claim is of right not to be subjected to orders.

While the provision of the act relating to authority to make special exceptions is somewhat shrouded in obscurity, it is thought to be its purpose and design that only the ordinance may declare them, leaving it to the board of adjustment to decide their application in particular cases. It is true that if words receive their literal meaning the act (s. 54) directs that by the ordinance authority shall be given the board to make exceptions in appropriate cases and under appropriate conditions. But the ordinance is to give the authority under "regulations and restrictions." This denotes that the ordinance may declare when exceptions may be permitted, and implies a denial of authority to the board to decide what conditions make an exception expedient. This view is confirmed by the definement of powers of the board in the act (s. 60). Thereby (II) they have power "to hear and decide special exceptions to the terms of the ordinance upon which" it requires them to pass. Thus it appears that the terms of the ordinance are to define the cases or conditions in or upon which exceptions are allowable, and the board's only function in respect to exceptions is to decide if the conditions exist which make the case an "appropriate" one. To give the board the right to create an exception as well as to decide if the facts and conditions show the existence of one provided for by the ordinance, would enable them to say what facts and conditions should properly warrant an exception. This would tend to vest them with a legislative power which the act (s. 48) in its general scheme delegates only to the local "legislative body." That the ordinance may establish exceptions, is clearly provided by the act. That besides those entitled to enact the ordinance the board of adjustment may also decide the conditions for granting an exception, is held not to be within the purview of the act.

In practice sharp distinctions between exceptions and variances may not in all cases be readily made, but the approach to the former as a legislative process and to the latter through appeals from administrative orders as a judicial function will generally serve to avoid an overreaching of a variance into the field of exceptions. A literal enforcement of the ordinance may be disregarded to permit a

variance, while the conditions for an exception must be found in the ordinance and may not be varied.

Furthermore, the rule of construction by which the exact meanings of "shall" and "may" as used in a statute are interchangeable when reasonably required (*Davis* v. *Smith*, 58 N. H. 16; *Horne* v. *Bancroft*, 62 N. H. 362, 363; *Whitney* v. *Watson*, 85 N. H. 238, 240), is here definitely applicable. The act in providing for appropriate exceptions to be established made no rules or tests of appropriateness. It follows that whether the local legislative body or the board of adjustment is charged with the duty of declaring exceptions, the duty is to declare only such as the deciding agency considers should be declared. That as a minimum at least one exception must be declared to meet statutory orders, might require action opposed to the judgment to be exercised. A construction of the act leading to such a result would ascribe an impractical purpose to the framers of the act.

The ordinance, declaring when there may be exceptions from its terms, complies with the act. It is not void because it does not permit an exception in a case like that of the defendants. The town's action in denying the exception was reasonable if it had authority to deny it. Unreasonable exercise of authority could not be valid, but reasonableness is to be found if it may be.

If the denial cannot be sustained under constitutional tests, the rule construing it as outside the scope of the act (*Woolf* v. *Fuller*, 87 N. H. 64, 69, and cases cited), may be invoked. But, as already stated, the defendants show no constitutional right to an exception. Zoning acts may properly plan for the future. Restrictions regulating development serve the general welfare. That other real estate in the immediate vicinity of the proposed structure will not be lessened in value by its erection and operation, may be assumed. But this is no more than evidence on the issue of reasonableness. The effect on present values of property in the restricted district is only one consideration of many in appraising and contrasting the public advantages and benefits with resulting hardship to the individual. The act does not apply to exceptions which are reasonable as matter of law. It does not require that local legislation be passed to provide for them. At most it only requires that the local legislative body shall establish such exceptions as it deems and as may be reasonable, and its action in such respect is not judicially reviewable.

The argument that the ordinance was passed for the sole reason of preventing the defendants from erecting and operating their pro-

posed structure is not maintainable. The motives of a legislative body are not subject to judicial inquiry in passing on the validity of its action. *Coleman* v. *District*, 87 N. H. 465, 471, and cases cited.

The foregoing considerations dispose of the main points of defence. The view that the statutory requirement (*s.* 56) for the board of adjustment to adopt rules "in accordance with the provisions of the ordinances" has not been observed, misconstrues the act. The rules are such as relate to procedure before the board, and the statutory command is that they shall conform to the ordinances, but without need of provision in the ordinance therefor. It would be an absurd mandate that the board might adopt no such rules until the ordinance had pointed out what rules or in what respect or manner rules might be adopted, and reasonable construction demands that the phraseology of the act receive no such meaning. Any failure of the board to adopt procedural rules is therefore of no effect to invalidate the ordinance.

The point that the structure proposed to be erected is one expressly authorized by statute (P. L., *c.* 162, *s.* 29, as construed in *State* v. *Uhrig*, 82 N. H. 480) presents no acceptable ground of defence. The act does not except such a structure, but applies to all private structures within its operative effect, whether they are otherwise lawful by or without legislative sanction.

The rulings of the court relating to waiver and to the inclusion of the defendants' land within the restricted area are understood to be accepted by waiver of the exceptions thereto. Under the views herein taken the other exceptions to rulings are overruled.

Upon amendment making the town the plaintiff,

*Decree affirmed.*

All concurred.