On May 31, 1951, The Graham Corporation applied to the defendant board for an authorization, as a special exception pursuant to § 9a (3) of the building zone regulations, to erect a multifamily dwelling on its property located on Brookside Drive and Indian Field Road in the town of Greenwich. The matter was heard on June 12 and on the 15th the board granted the application resulting in this appeal.
Several claims of law are made, the first two alleging that the grant of power to the board to make exceptions is invalid because it amounts to a delegation of legislative authority and permits the board to amend the regulations.
There is not question that zoning is a proper subject for legislative regulation and under our law may be delegated to a town plan commission as in this case. General Statutes § 836. Such a commission has the power to delegate certain of its powers to fill up the details by prescribing rules and regulations for the operation and enforcement of the law. 8 McQuillin, Municipal Corporations (3d Ed.) §§ 25.214, 25.215. In order to be binding, however, it is necessary that the statute declare a legislative policy, establish primary standards for carrying it out or lay down an intelligible principle to which the administrative body must conform, with a proper regard for the protection of the public interests and with such degree of certainty as the nature of the case permits. Keating v. Patterson, 132 Conn. 210; State
v. Stoddard, 126 Conn. 623.
The right to pass on special exceptions is given the defendant board by statute and in the regulations. General Statutes § 842(2); Greenwich Bldg. Zone Regs. § 28a (4).
The property involved in this case is in an R-MF zone. Multifamily dwellings to accommodate not *Page 46 
more than eight families are permitted. The application here covered a unit for 195 families. There is a provision for multifamily dwellings to accommodate more than eight families "when authorized as a special exception by the Board of Appeals."
The procedure to be adopted is outlined in § 28b (1), (2), (3), and the norm or standard to be followed is specifically set out. Public notice must be given of the hearing, all determinations must be "subject to appropriate conditions and safeguards in accordance with the public interest and the comprehensive plan" set forth in the regulations, and be "in harmony with the purpose and intent expressed in Section 1," dealing with the reasons for the enactment of the law. Further, the board must not only find the existence of these requirements but also that the proposed building, structure or use of the land (a) [w]ill not create or aggravate a traffic, explosion, fire, panic or other hazard; (b) [w]ill not block or hamper the town pattern of highway circulation; (c) [w]ill not be detrimental to the neighborhood or its residents or alter the neighborhood's essential characteristics; and (d) [w]ill not create or aggravate a nuisance resulting from odors, fumes, smoke, waste, vibration or noise.
This sets out a sufficient guide for the board to act upon. It follows the fundamental rule than an ordinance must establish a standard to operate uniformly and govern its administration and enforcement in all cases. It does not leave the interpretation, administration or enforcement of the ordinance to the unbridled or ungoverned discretion, caprice or arbitrary action of the board. The mere fact that no definite limit is set for the number of families over eight which may be accommodated under the grant of a special exception is not fatal, as this presents a question of degree and a matter of discretion for determination by the board. *Page 47 
Other claims allege the board failed to exercise its power in the manner required by the statute and the decision reached has no foundation in fact.
The decision of the board in this case states: "The special exception use requested on this application has already been granted by this Board at our last hearing under Application No. 1923." A reference to that application discloses authorization was sought for a special exception to permit three multifamily dwellings, each housing sixty-five families, for the same property involved in this application. The board voted in favor of multifamily use of the property but denied the right to construct three buildings, holding that the regulations provided for only one. In both cases the plans submitted were preliminary ones and did not represent what would be found in the completed structure, and the applicant was not bound to construct the dwelling in accordance with them.
Thus, in ruling on both of these applications the board in effect allowed the granting of an exception without reference to completed plans and specifications, for it definitely states that after the use has been granted proper procedure requires the passing upon the actual plans by the building inspector and a further appeal to the board in the event of a refusal to grant the permit.
The relief sought in each case was the authorization of a special exception, not a variance. There is a difference. The latter is granted upon the showing of practical difficulties and unnecessary hardships. Proof of this is not required in the case of an exception.
An "exception" within the meaning of a zoning ordinance is a dispensation permissible where the board of zoning appeals finds existing those facts and circumstances specified in the ordinance as sufficient *Page 48 
to warrant a deviation from the general rule.Heath v. Mayor City Council of Baltimore,187 Md. 296, 303. Ordinarily, the determination of the question whether a variance or exception should be granted in a particular instance rests in the sound discretion of the board of appeals. However, this power is not arbitrary and uncontrolled. It is subject to and limited by the conditions and requirements specified in the ordinance. A literal enforcement of the ordinance may be disregarded to permit a variance, while the conditions for an exception must be found in the ordinance and may not be varied. The board's only function in respect to exceptions is to decide if the conditions exist which make the case an appropriate one. Stone v. Cray,89 N.H. 483, 487.
In this matter of exercising the discretionary power to make exceptions, the burden of proof is on the owner to show that the local situation calls for the exception, taking into consideration the conditions and restrictions set out in the ordinance. Without some basis of fact, the board is without power to authorize an exception. Cook v. Board of Adjustment,118 N.J.L. 372, 375; Thompson v. PhillipsPetroleum Co., 194 Okla. 77, 79. The same rule applies where a variance is sought. Perdue v. ZoningBoard of Appeals, 118 Conn. 174, 178; DeFelice
v. Zoning Board of Appeals, 130 Conn. 156, 164. In both cases the authority granted is to be sparingly exercised and the applicant must meet the conditions set out in the ordinance.
Section 28b (3) provides: "The Board shall grant all applications for special exceptions...." The board in its decision ruled they "are permitted uses and must be granted ... almost, as it were, by rubber-stamp approval, unless it is shown that they should be denied because of the existence of certain hazards or nuisances. In cases dealing with permitted *Page 49 
uses the burden of proof is on those who claim that they should not be permitted. Those who assert there is a traffic hazard or fire hazard have the burden of proving it."
There is no finding that the conditions and provisos set out in § 28b (3) have been met, and the burden of showing their existence is placed upon anyone opposing the grant of an exception. This is not what the ordinance contemplates, for it definitely states the grant shall be made "subject to the aforesaid conditions and safeguards" and "provided ... particular requirements ... are met" and "provided further that the Board shall find ... the proposed building or structures, or proposed use of land," will not violate any of the principles set out in the four succeeding subdivisions.
Under this ordinance, it was incumbent upon the board in the performance of the duties delegated to determine whether the provisos and conditions set out had been met. That the board did not consider these requirements is evidenced by its statement in the opinion in application no. 1923 that it was not its province to decide whether multifamily dwellings are appropriate and in harmony with the zoning regulations since this has already been determined by the town plan commission, and the use itself therefore cannot be considered as detrimental to the neighborhood or its residents or as altering the neighborhood's essential characteristics.
The use itself, insofar as it deals with multifamily dwellings to accommodate not more than eight families, has been determined, so that in this R-MF zone they are permitted as a matter of right and without resort to any action by the board, but when the request goes beyond this and seeks permission for 165 families, application must be made and the board must find the existence of the statutory conditions. *Page 50 
Again, in this opinion, the board states that its approval of the application "would merely be a determination that none of the hazards and nuisances to which our consideration of the case is confined by the regulations" are found to exist. Thus its consideration was limited to the traffic angle required by § 28b (3)(a) in view of its holding "that the special exception should be granted, and more particularly that proof as to traffic and fire hazards is insufficient to justify our withholding permission."
In accordance with the ordinance, the application was also submitted to the town plan commission so that it could make a report to the board before the hearing. In its report the commission gave the opinion that the erection of a single building to house 195 families would be detrimental to the neighborhood and its residents, would after the neighborhood's essential characteristics and would run counter to the purposes of the zoning regulations expressed in § 1.
The board disregarded this and considered the size of the building a matter which had already been passed upon by the commission as being suitable in view of the allowance of multifamily dwellings in this particular district. It would seem that the board adopted the theory that the town plan commission, having decided the particular district was suitable to be zoned for multifamily dwellings, had already ruled that the requirements outlined in § 28b (3) had been satisfied, and to require it to pass on the question amounted to "an inexplicable contradiction."
In ruling as it did on the question of proof, in failing to set out any conditions or safeguards, and in its failure to follow the express mandate of the ordinance, the action of the board is voidable on appeal. Youngs v. Zoning Board of Appeals,127 Conn. 715, 716. *Page 51 
In a special defense the defendants cite two previous decisions of the board permitting multifamily use of the applicant's premises and claim they are res adjudicata to the issue raised in this case since no appeal was taken.
In those cases the plans submitted were different from those involved here and the relief sought was not the same. To say that a special exception may be granted to cover any subsequently furnished set of plans would be contrary to the general zoning laws and in violation of the intent and express conditions of the present ordinance. Matter of Read v.Board of Standards Appeals, 138 Misc. (N. Y.) 187.
 The action of the board in granting the relief sought in this case was arbitrary, illegal and in abuse of its discretion and the appeal is sustained.