40 N.J. Super. 206 (1956)
122 A.2d 660
HAVELOCK I. JAMES AND DOROTHY JAMES, FRANCESCO F. FONSECA AND RUTH J. FONSECA, EDNA B. POST, ROBERT KERR AND DOROTHY KERR, EDWARD J. CARLSON, CHARLES E. DeHART AND ELIZABETH DeHART, JAMES V. MAFFEI, MONTELEONE ROGERS, L. ALEXANDER DOLAN AND ANNE DOLAN, PLAINTIFFS,
v.
BOARD OF ADJUSTMENT OF THE TOWN OF MONTCLAIR, THE INSPECTOR OF BUILDINGS OF THE TOWN OF MONTCLAIR, THE MONTCLAIR ART ASSOCIATION, INC., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided May 10, 1956.
*207 Mr. John J. Winberry, attorney for plaintiff.
*208 Mr. Samuel Allcorn, Jr., attorney for defendants Board of Adjustment of the Town of Montclair and Inspector of Buildings of the Town of Montclair.
Messrs. McCarter, English & Studer, attorneys for defendant The Montclair Art Association, Inc.
COOLAHAN, J.S.C.
This is a proceeding in lieu of prerogative writ to review the validity of a resolution of the Board of Adjustment of the Town of Montclair, dated September 15, 1955, approving the application of the Montclair Art Association, Inc. (hereinafter called "The Association") for an off-street parking lot on its premises. The Association has been the owner of an art museum on Bloomfield Avenue in Montclair since 1914. The museum is located in an R-O Zone, otherwise known as Mountainside Zone, as established in the zoning ordinance of the Town of Montclair. By the terms of section 6 of such ordinance only the following uses are permitted in an R-O Zone:
"* * *
(a) A one-family detached dwelling.
(b) Parks and playgrounds operated by the Town of Montclair or the County of Essex.
(c) Schools, Libraries and museums, operated by the Town of Montclair.
(d) A doctor's office either as part of a dwelling or separately, subject to the conditions specified in Section 20 of this Ordinance.
(e) Accessory uses customarily incident to the above uses."
The premises in question are commonly known as No. 3 South Mountain Avenue and are designated on the tax maps of the Town of Montclair as Map 41, Block A, Lots 1 and 2. The tract is a large one, bounded on the north by Bloomfield Avenue (360 feet), on the west by South Mountain Avenue (340 feet), on the east by St. Lukes Place (165 feet), and with a southerly side line extending 390 feet. For approximately 40 years a considerable portion of this tract has been occupied by a large museum building which has been operated by the Association as a cultural and educational *209 center in the arts and the exhibition of works of art to the citizens of Montclair and neighboring communities. Because of increasingly hazardous traffic conditions on Bloomfield Avenue and South Mountain Avenue, and in the absence of any on-premises parking facilities for students (400) and visitors (22,000 per annum), the Association sought permission of the board of adjustment for a 29-car parking lot on its premises.
The premises bound upon and adjoin on the east the westerly end of Montclair's main business district, which extends easterly from the museum property on both sides of Bloomfield Avenue all the way to the Montclair-Glen Ridge municipal boundary line, a distance of approximately two-thirds of a mile. Directly across from the museum property on the northerly side of Bloomfield Avenue is a large Food Fair supermarket, including an extensive parking area; immediately adjoining the Food Fair on the east are the commercial office and old car-barns, owned by Public Service, the latter formerly used for the storage of trolley cars. Directly across St. Lukes Place from the museum property and fronting on the southerly side of Bloomfield Avenue is a commercial photographer's shop.
St. Lukes Place south from Bloomfield Avenue, except for the first 100 feet on the easterly side which is zoned for business and the museum property on the west side, is zoned almost entirely for multi-family and apartment dwellings (R-3), and the actual use of these properties is predominantly multi-family dwellings and apartment houses. Directly opposite the museum property, the westerly side of South Mountain Avenue is zoned for multi-family use and is being used for garden apartments.
The plaintiffs are a group of property owners who reside within 200 feet of the museum property. Their objections to the proposed off-street parking area include, among others, the claim that it will create a traffic hazard for children, a source of annoyance, disturbance and discomfort to the neighborhood, and will depreciate the value of property for residential purposes. They also contend that the findings of *210 the board of adjustment were inadequate and insufficient if it had proceeded under subsection (c) of N.J.S.A. 40:55-39, as amended, or that the board of adjustment had exceeded its powers by approving the application rather than recommending its approval to the local governing body, if it had proceeded under subsection (d) of that enabling statute.
While the principal criticism urged by those who appeared at the hearing before the board of adjustment in objection to the application was the creation of a traffic hazard to children, the plaintiffs herein additionally contend that the action of the board of adjustment constituted the extension or enlargement of a nonconforming use in contravention of the spirit of the zoning statutes and the applicable zoning ordinance. They further contend that section 19 of the Montclair zoning ordinance is illegal in that it lacks a standard or norm.
The plaintiffs are met with the presumption that the action of the board of adjustment was valid and must bear the burden of establishing the contrary. Brandt v. Mt. Holly, 16 N.J. Super. 113, 117 (App. Div. 1951). In the case of Schmidt v. Board of Adjustment, Newark, 9 N.J. 405 (1952), the Supreme Court, at page 423 thereof declared:
"The rationale of the statutory scheme is that the board of adjustment shall supply expert discretion to the matters coming within its cognizance, and judicial interference is permissible only for relief against the arbitrary or capricious action that constitutes a clear abuse of the delegated discretion. The reviewing judicial authority may not exercise anew the jurisdiction of the administrative agency and merely substitute its own independent judgment for that of the body entrusted by the Legislature with the administrative function. Brandon v. Montclair, cited supra."
By the terms of subsection (b) of N.J.S.A. 40:55-39 it is provided that:
"The board of adjustment shall have the power to:

* * * * * * * *
"b. Hear and decide, in accordance with the provisions of any such ordinance, requests for special exceptions or for interpretation of the map or for decisions upon other special questions upon which such board is authorized by any such ordinance to pass. * * *"
*211 Section 19 of the zoning ordinance of the Town of Montclair, pursuant to which the board of adjustment acted, provides as follows:

"Section 19

REGULATIONS CONTROLLING GARAGES AND PARKING LOTS IN RESIDENCE ZONES
GARAGES AND ACCESSORY PARKING FACILITIES: In each R Zone there shall be permitted as an accessory use to any use permitted in such zone, a garage or group of garages or garage facilities for not more than three (3) vehicles, except that in the R-3, R-4 and R-5 Zones, where there are three or more family dwelling units built upon the same lot, a garage or group of garages for not more than one (1) vehicle for each family unit, and parking facilities, shall be permitted as an accessory use, if designed and constructed in one of the following ways:

* * * * * * * *
PARKING LOTS: Where deemed necessary, after a hearing before the Board of Adjustment off-street parking lots in private ownership, for other than accessory use only as approved by the Board of Adjustment, may be permitted in R Zones, if sufficiently landscaped, appropriately screened, and adequately surfaced as in the judgment of the Board of Adjustment, is necessary to afford protection to the surrounding residential properties. The Board of Adjustment shall also have authority to regulate the use of such parking lots as a condition for their establishment."
Plaintiffs contend the above cited section 19 is not applicable to the museum premises since its language does not embrace a nonconforming use. However, the first subsection of section 19, "GARAGES AND ACCESSORY PARKING FACILITIES" permits three vehicle garages as an accessory use "to any uses permitted in such zone * * *." (Italics supplied) The limitation as to permitted uses is significantly absent in that portion of section 19 which deals with parking lots.
It would appear, therefore, that the Montclair zoning ordinance expressly delegates to the board of adjustment the power to pass upon the necessity for off-street parking areas in residence zones. Such delegation of power comes within the purview of subsection (b) supra, N.J.S.A. 40:55-39. The case of Schmidt v. Board of Adjustment, Newark, 9 N.J. 405, 420 (1952), defines the alternate method whereby *212 a board of adjustment acts either in a final or recommendatory capacity under subsection (b) of N.J.S.A. 40:55-39.
The role of subsection (b) of N.J.S.A. 40:55-39 is outlined in Moriarty v. Pozner, 21 N.J. 199 (1956), wherein Justice Heher, at page 210 stated:
"In the board's view the `exception' is confounded with the `variance.' An `exception' concerns the legislative function. It is allowable to serve the general good and welfare rather than individual interests merely; but the conditions for such special use must be found in the local legislative act and may not be varied. Schmidt v. Board of Adjustment of Newark, supra; Stone v. Cray, 89 N.H. 483, 200 A. 517 (Sup. Ct. 1938); Flynn v. Zoning Board of Review, supra. Exceptions involve the exercise of an original jurisdiction for the accommodation of zoning practice and public needs exceptional in nature, and thus reasonably to advance the essential common interest as an integral part of the zoning process to the same end.
Such is the significance of subdivision (b) of R.S. 40:55-39, as amended by L. 1953, c. 288, N.J.S.A. The board is thereby empowered to hear and decide `requests for special exceptions' in accordance with the provisions' of the local zoning ordinance."
See also Ranney v. Istituto Pontificio Delle Maestre Filippini, 20 N.J. 189, 198, 199 (1955).
In the instant case the evidence before the board of adjustment supported its findings that curb parking facilities were inadequate and that the off-street parking proposed was desirable and consistent with the intent and purpose of the zoning ordinance. In section 9 of the Montclair zoning ordinance which regulates R-2 zones  within which the defendant museum would be a permitted use  the board of adjustment is given the authority to require as a condition of such use an off-street parking area to accommodate the usual number of cars of those visiting said premises. This is in consonance with the board's findings that the art museum's application was consistent with the purpose of the zoning ordinance in requiring off-street parking facilities "for all those uses which tend to be or are traffic generators." The contemplated off-street parking area, therefore, would seem to represent a step in the direction of conformity.
In this era of congested traffic and inadequate parking facilities a zoning ordinance of any urban municipality *213 that contains no provision for off-street parking is outmoded. The authority granted to the Montclair board of adjustment under section 19 of its zoning ordinance constitutes a valid method of dealing with off-street parking facilities that go beyond the category of mere accessory uses. Conditions for landscaping, screening and surfacing for the protection of surrounding residential properties, as well as regulatory features, as authorized in the ordinance, were attached to the board's approval of the off-street parking area in question. Viewed in the light of one of the express purposes of zoning as set forth in R.S. 40:55-32, viz., "to lessen congestion in the streets," as well as in the light of the traffic and parking situation surrounding the premises in question, the evidence adduced before the board of adjustment supports its finding that the proposed off-street parking area is necessary and that it will not be detrimental to the morals, health, safety, or general welfare of the public nor injurious to property or improvements in the vicinity, nor will it substantially impair the intent and purpose of the zone plan and the zoning ordinance.
From the very able briefs filed by the parties to this action and from my examination of the transcript of the hearing before the board of adjustment, as well as the exhibits, I find that the resolution of the Board of Adjustment of the Town of Montclair, adopted at its meeting held on September 15, 1955, approving an off-street parking area for the defendant Association, was in all respects a lawful, proper and reasonable exercise of the power and authority vested in said board by the zoning ordinance of the Town of Montclair pursuant to subsection (b) of N.J.S.A. 40:55-39.
There will be judgment for the defendants and against the plaintiffs but without costs.