BROWN BOVERI, INC., A CORPORATION OF THE STATE OF NEW YORK; KURT ORBAN CO., INC., A CORPORATION OF THE STATE OF NEW YORK; E. D. GIBERSON & CO., INC., A CORPORATION OF THE STATE OF NEW YORK; GRAYBAR ELECTRIC CO., INC., A CORPORATION OF THE STATE OF NEW YORK; AND AVERY INTERNATIONAL, INC., A CORPORATION OF THE STATE OF CALIFORNIA, ALL DOING BUSINESS IN THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS, v. TOWNSHIP COMMITTEE OF THE TOWNSHIP OF NORTH BRUNSWICK, NEIL COOKE, BUILDING INSPECTOR OF THE TOWNSHIP OF NORTH BRUNSWICK, BOARD OF ADJUSTMENT OF THE TOWNSHIP OF NORTH BRUNSWICK, AND NICHOLAS PULEIO, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued May 16, 1978—Decided June 1, 1978.

Before Judges HALPERN, LARNER and KING.

*Mr. Phillip Lewis Paley* argued the cause for appellants (*Messrs. Golden, Shore* and *Paley,* attorneys).

*Mr. Joseph H. Burns* argued the cause for respondents Township Committee of the Township of North Brunswick, Neil Cooke Building Inspector, and Board of Adjustment of the Township of North Brunswick (*Mr. Richard S. Rebeck* on the brief for the Board of Adjustment).

*Mr. Harold J. Gerr* argued the cause for respondent Nicholas Puleio (*Mr. Ralph Mayo,* attorney).

The opinion of the court was delivered by

LARNER, J. A. D. Plaintiffs appeal from a judgment affirming the grant of use and bulk variances to defendant Nicholas Puleio which permit his to construct an automobile showroom for new car sales on a parcel of land located in an Industrial Zone of the Township of North Brunswick. Defendant purchased the 100' x 100' parcel several years prior to the variance application and when the present zoning ordinance was in effect. This ordinance incorporates this lot in an Industrial I District which does not permit a use for new car sales and showroom and requires a minimum area of two acres for industrial develop-

ment only. The ordinance does permit the proposed business use for new car sales in a Commercial C-2 district.

Puleio had also purchased at the same time a parcel of land approximately 200 feet away from the lot involved in this litigation, where he established a business for automobile repairs and sale of used cars.

In November 1975 he applied for a building permit for the construction of an automobile showroom on the 100′ x 100′ lot, which was denied by the zoning officer because such use was not a permitted one in the applicable zone and because of many deficiencies associated with the undersized lot. In view of this denial the owner filed an application for variances with the board of adjustment which in effect sought several bulk variances under *N. J. S. A.* 40:55–39(c) and a use variance for "special reasons" under *N. J. S. A.* 40:55–39(d).

After a hearing at which plaintiffs, as adjoining owners of industrial structures, voiced their objections, the board recommended approval of the applicant's request for a use variance and numerous bulk variances which would permit the construction of the automobile showroom in the Industrial Zone on an undersized lot and with physical features which violated several minimum standards of the local ordinance. The township committee thereafter granted the variances on the record, findings and recommendations presented by the board of adjustment.

The resolution of the board found that the negative criteria of the statute were met in that said variances will not be a substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance.

With respect to the "special reasons" within the ambit of section (d) of the statute it found "that the subject site is not suitable for industrial use by reason of its size" and that "the proposed use, under all circumstances, is the highest and best use and that the proposed use will not adversely affect nearby industrial properties."

It also appears from the resolution that among the persuasive factors for the grant of the "special reasons" use variance was the testimony of the applicant that he was required to purchase the subject site when he purchased the nearby property where he conducts his auto repair and used car business, and that he has been unable to purchase additional land surrounding the subject site.

With regard to both variances the board found that "applicant has demonstrated that a hardship and special reasons do exist as required by the statute."

Upon the grant of the variances by the township committee plaintiffs filed an action in lieu of prerogative writs which resulted in a judgment sustaining the variances granted by the municipality. The trial judge found that the discretionary action of the board of adjustment and township committee was supported by sufficient credible evidence both as to the (c) and (d) variances and that plaintiffs had failed to demonstrate the arbitrariness requisite for judicial relief.

We disagree and conclude that the grant of the variances was unwarranted under the record facts and applicable law.

In adopting its zoning ordinance the governing body of North Brunswick, in its legislative capacity, deemed it appropriate to give special treatment to certain land uses in the municipality by providing that such designated uses require a permit for a "special exception."[1] See *N. J. S. A.* 40:55–39(b) ; *Tullo v. Millburn Tp.,* 54 *N. J. Super.* 483 (App. Div. 1959). Among the uses so designated is that for new car sales and showrooms (Code § 145–123). Article

[1]The recently enacted Municipal Land Use Law (*N. J. S. A.* 40: 55D–1 to 91) does not apply herein. In this latest enactment, however, "special exceptions" are designated as "conditional uses" with the same function and limitations of preexisting "special exceptions." See *N. J. S. A.* 40:55D–3 and 67; Dept. of Community Affairs, "The New Jersey Municipal Land Use Law — A Series of Monographs," at 3.3 and 4.1 (June 1976).

XXVIII of the ordinance dealing with special exception uses is introduced by the following:

§ 145-111. *Guiding principles and general provisions.*

A. Recognizing that certain uses, activities and structures are necessary to serve the needs and conveniences of the Township of North Brunswick and, at the same time, recognizing that such uses may be or may become inimical to the public health, safety and general welfare if located and operating without proper consideration being given to existing conditions and character of the surrounding area, such uses are hereby designated as special exception uses. In addition to other powers conferred by this chapter and applicable statutes, the Board of Adjustment shall have original jurisdiction and power to recommend to the Township Committee granting of a permit for a special exception use under the terms and conditions established by this chapter under the following stipulations and guiding principles:

 (1) The use for which application is being made is specifically authorized as a special exception use in the Article of this chapter for the zoning district in which it is located.

 *  *  *  *  *  *  *  *

The foregoing ordinance provisions for special exceptions follow existing law as implemented by the policy decision of the local legislature. It recognizes that certain uses, although permitted in one or more districts designated in the general zoning ordinance, may have an unusual "inimical" impact upon public health, safety and general welfare if located in a particular area of the permissible zoning district. For that reason no one may establish such a use without a special permit therefor, regardless of full compliance with the other requirements of the zoning ordinance. In addition to automobile showrooms, the ordinance includes in that category such uses as private and parochial schools, places of worship, public utilities, rooming houses, motor vehicle service stations, motels, shopping centers, hospitals, drive-in restaurants, etc.

It is abundantly clear that a "special exception" permit is different and distinguishable from a section (d) use

variance. See *Tullo v. Millburn Tp., supra,* wherein Judge (later Justice) Hall pointed out:

> In order that our subsequent discussion of the issues in this case may be viewed in their proper legal perspective, we interrupt the factual narrative to comment on the true nature of a "special exception" under our statute. The term might well be said to be a misnomer. "Special uses" or "special use permits" would be more accurate. The theory is that certain uses, considered by the local legislative body to be essential or desirable for the welfare of the community and its citizenry or substantial segments of it, are entirely appropriate and not essentially incompatible with the basic uses in any zone (or in certain particular zones), but not at every or any location therein or without restrictions or conditions being imposed by reason of special problems the use or its particular location in relation to neighboring properties presents from a zoning standpoint, such as traffic congestion, safety, health, noise, and the like. The enabling act therefore permits the local ordinance to require approval of the local administrative agency as to the location of such use within the zone. If the board finds compliance with the standards or requisites set forth in the ordinance, the right to the exception exists, subject to such specific safeguarding conditions as the agency may impose by reason of the nature, location and incidents of the particular use. Without intending here to be inclusive or to prescribe limits, the uses so treated are generally those serving considerable numbers of people, such as private schools, clubs, hospitals and even churches, as distinguished from governmental structures or activities on the one hand and strictly individual residences or businesses on the other. [54 *N. J. Super.* at 490–491]

See also *Schmidt v. Newark Bd. of Adj.,* 9 *N. J.* 405, 422 (1952).

In *Verona, Inc. v. West Caldwell Mayor and Council,* 49 *N. J.* 274 (1967), the court noted:

> The basic difference between a use which is a special exception and one which requires a variance is that the former is legislatively *permitted* in a zone subject to controls whereas the latter is legislatively *prohibited* but may be allowed for special reasons. [at 282]

Because of the singular legislative treatment of special exceptions in the enabling statute (*N. J. S. A.* 40: 55–39(b)) and the ordinance, permission to use a parcel

of land for a structure housing an automobile showroom can only be obtained through the special exception procedure and not through the avenue of a section (d) variance. If a municipality has opted for special control of a particular land use with legislative limitations and conditions, its legislative purpose cannot be frustrated by the bypassing of the specific ordinance controls through the method of a (d) variance application. In simple terms, a use encompassed by the special exception provision of the ordinance can only be authorized through an application for a special exception and compliance with the legislative conditions imposed by the ordinance for such use.

The Supreme Court in *Ranney v. Istituto Pontificio Delle Maestre Filippini,* 20 *N. J.* 189 (1955), expressed this view in the following terse comment:

It is not the understanding of this court that *N. J. S. A.* 40:55–39 (*d*) was ever intended by the Legislature to encompass what is known in zoning law as an "exception." *Cf. N. J. S. A.* 40:55–39(*b*). \* \* \* \* \* \* \* \* The exception procedure is safeguarded by standards set forth in the ordinance. [at 198–199]

To the same effect, see *Moriarty v. Pozner,* 21 *N. J.* 199, 211 (1956); 1 *Metzenbaum, The Law of Zoning* (2 ed. 1955), 813–814.

In harmony with the foregoing it is manifest that under the North Brunswick ordinance the appropriate mechanism for permission to use the property for an automobile showroom was limited to an application to the board for a special exception. The application for the (c) and (d) variances was improper and the granting of the same by the board was beyond the powers delegated to it by the ordinance.

Of course, such an exception could not be granted in any event to the applicant herein because the proposed use is not a permitted one in the zoning district in which the property is located. See *Tullo v. Millburn Tp., supra,* 54 *N. J. Super.* at 491. Automobile showrooms constitute a

permitted use in Commercial C-2 Districts only, subject to a special use permit (Code §§ 145-65, 66), and are not included as a permitted use in an industrial zone.

The inappropriateness of the action of the board of adjustment becomes more apparent when we examine the rigid safeguarding conditions imposed by the ordinance for approval of a special exception relating to an automobile showroom use. For example, § 145-123 of the ordinance sets up minimum standards for such a special exception which include (a) a minimum lot area of five acres, (b) a minimum lot frontage of 400 feet, (c) a minimum lot depth of 400 feet, (d) a minimum floor area in the building of 15,000 square feet, and (e) a minimum open space of 25% of the lot area. These conditions represent limitations which can properly be imposed within the legislative discretion and power of the municipality as a policy determination of the controls it deems necessary for the special use involved in order to advance the safety, health and welfare of its inhabitants.[2]

When such conditions are contained in the ordinance as a prerequisite for a special exception permit, the board of adjustment cannot circumvent the minimum legislatively imposed conditions by granting a variance whereby the special use is authorized with physical characteristics which are a mere fraction of those required by the ordinance.[3]

Conditions imposed in connection with a special exception use involve the exercise of the legislative function of the municipality as a means of serving the general good and

---

[2]Since the ordinance conditions for the special use herein are not under attack in this litigation, we offer no opinion as to their reasonableness.

[3]The area is approximately 1/20 of the five-acre requirement; the front and depth are 1/4 of the ordinance minimums; the lot is too small to accommodate the minimum building size of 15,000 sq. ft.; the proposed project would make it impossible to comply with the open space requirement.

welfare of the community. When established in this manner, these conditions constitute minimum mandatory requirements for the grant of a special exception permit which may not be waived via the variance process or otherwise. See *Moriarty v. Pozner, supra,* 21 *N. J.* at 210; *Value Oil Co. v. Irvington,* 152 *N. J. Super.* 354, 366–367 (Law Div. 1977); *Abramson v. Zoning Board of Appeals,* 143 *Conn.* 211, 120 *A.* 2d 827, 828–829 (Sup. Ct. Err. 1956); *Service Realty Corp. v. Planning & Zoning Bd. of Appeals,* 141 *Conn.* 632, 109 *A.* 2d 256 (Sup. Ct. Err. 1954); *Stone v. Cray,* 89 *N. H.* 483, 200 *A.* 517, 521 (Sup. Ct. 1938); 2 *Yokley, Zoning Law and Practice* (3 ed. 1965), § 15–4 at 141–143, 1 *Metzenbaum, supra* at 813–814; 101 *C. J. S. Zoning* § 271 at 1036.

In view of the foregoing analysis of the function and purpose of the special exception provisions in the North Brunswick ordinance and the applicable law, the (c) and (d) variances granted by the municipality permitting the use proposed by the property owner are without legal warrant.

Because of this determination we do not reach the question whether the variances would be legally supportable in the absence of the special exception provisions of the ordinance.

Accordingly, we reverse and direct the entry of judgment for plaintiffs setting aside the variances. No costs to any of the parties.